**UNITED STATES of America,**
**Appellee,**

v.

**Cloyd L. UNVERZAGT, Appellant.**

**No. 19904.**

United States Court of Appeals,
Eighth Circuit.

April 23, 1970.

Rehearing Denied May 22, 1970.

Samuel J. Hunter, Omaha, Neb., for appellant.

William J. Tighe, Asst. U. S. Atty., Omaha, Neb., for appellee; Richard A. Dier, U. S. Atty., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and GIBSON, Circuit Judges.

VAN OOSTERHOUT, Chief Judge.

This is a timely appeal by defendant Cloyd L. Unverzagt from his conviction by a jury and the resulting sentence upon an information which charged him with receiving, concealing and retaining stolen money orders with intent to convert them to his own use in violation of 18 U.S.C.A. § 641.

Defendant before trial moved to suppress the use of money orders found

upon his person and in his toilet kit as evidence upon the ground that they were seized in violation of his Fourth Amendment rights. The motion was overruled. The money orders were received in evidence at the trial over defendant's Fourth Amendment objection.

The only error asserted on this appeal is that the postal money orders were obtained in violation of defendant's Fourth Amendment rights and that hence the court erred in failing to suppress the money orders as evidence. We hold that the court committed no error for the reasons hereinafter set out. We affirm.

The controlling facts are virtually undisputed. Postal Inspector Brown received a telephone call about 9:00 a. m. on January 27, 1969, from a man identifying himself as Bob Helgren, a trucker, informing him that a man called Cloyd or Clyde "Undergod" whom he described as 5 feet 7 inches to 5 feet 9 inches in height and weighing 150 to 155 pounds, with a fresh scar on his forehead had attempted to sell him postal money orders at the Corral Bar in South Omaha. The officer had not previously known informer Helgren and was never able to locate him.

Inspector Brown, accompanied by two associates, proceeded to the Corral Bar about 9:30 a. m. the same morning to locate the party described by the informer and to investigate the tip given them by the informer. Upon arrival they found the bar had not yet opened. Investigation in the neighborhood revealed that a person answering the suspect's description had been seen in the neighborhood. At approximately 11:00 a. m. the inspectors were informed by a bartender at a bar near the Corral Bar that he had just seen a man meeting the suspect's description walking toward the Corral Bar with a woman. The inspectors then went to the Corral Bar and upon inquiry were told by the bartender that the party meeting the description given was in the men's washroom and that he thought the man had a gun. The inspectors briefly interviewed the suspect's woman companion. She told them Unverzagt was armed.

The three postal inspectors then approached the men's room. Upon arriving at the door, Inspector Brown drew his gun and ordered Unverzagt to come out. On the second request, he came out with his hands in his front trouser pockets. Inspector Brown then ordered him to raise his hands and as Unverzagt complied he withdrew a revolver, which was taken from him. The suspect was then placed against the wall and searched. Inside his right jacket pocket the officers found a quantity of postal money orders which were the subject of the prosecution. After the defendant, in custody of the officers, had been removed from the bar, the bartender found a toilet kit in the men's room which he gave to the inspectors. The kit also contained a number of stolen money orders. Defendant at first denied ownership of the toilet kit but later admitted that it was his.

The defendant of course is entitled to the protection of the Fourth Amendment. The Fourth Amendment provides:

"[T]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated."

The issues under the Fourth Amendment in this case are whether there was a "search" or "seizure" or both and whether they were "reasonable". If there was a search or seizure which was "unreasonable" the products of such search or seizure are inadmissible as evidence. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court defined the Fourth Amendment term "seized" for the purpose of police-citizen street encounters. The Court said:

"It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk

away, he has 'seized' that person." 392 U.S. 1, 16, 88 S.Ct. 1868, 1877.

From the record in this case, it would appear that the postal authorities "seized" the defendant Unverzagt when they instructed him to step out of the men's room at the Corral Bar. The question then becomes whether this seizure was reasonable under the Fourth Amendment.

■ The postal inspectors had no warrant for the arrest or search of the defendant at the time they seized the defendant. No probable cause for defendant's arrest existed at the time of the seizure. An uncorroborated accusation by an informant whose identity is unknown and whose reliability has not been established cannot constitute probable cause. Beck v. Ohio, 379 U.S. 89, 91, 96–97, 85 S.Ct. 223, 13 L.Ed.2d 142; Holbrook v. United States, 10 Cir., 406 F.2d 44, 46.

■ Even though no probable cause for arrest exists, officers have a limited right under appropriate circumstances to stop a suspect for questioning and investigation. Terry v. Ohio, 392 U.S. 1, 11, n. 5, 88 S.Ct. 1868, 20 L.Ed.2d 889; Chimel v. California, 395 U.S. 752, 762, 89 S.Ct. 2034, 23 L.Ed.2d 685.

This court in Carpenter v. Sigler, 8 Cir., 419 F.2d 169, 171, stated the applicable law for this situation. We said:

"The Court in *Terry* indicated that the judicial inquiry into the question of 'reasonableness' is a dual one. A reviewing court must objectively evaluate the 'specific and articulable facts which, taken together with rational inferences from those facts' and determine: (1) whether the facts warranted the intrusion on the individual's Fourth Amendment rights, and (2) whether the scope of the intrusion was reasonably related 'to the circumstances which justified the interference in the first place.' "

■ In applying the analysis to the facts of this case, we must determine whether the initial seizure of Unverzagt was reasonable. The postal authorities were informed that a man meeting Unverzagt's description was selling postal money orders at the Corral Bar. This fact quite properly raised the suspicions of the inspectors since postal money orders are not generally sold in this manner. The officers did not know that Unverzagt had committed a crime or that a crime had been committed at all but they were reasonable in believing that further investigation was necessary. We think it was reasonable for the postal authorities to go to the Corral Bar to find out firsthand what was going on and to briefly seize Unverzagt to ask him about the situation.

■■ The right to frisk the suspect for weapons will be upheld when such course appears to be reasonably necessary for the officers' protection. The information received by the inspectors with respect to the defendant being armed constitutes a reasonable basis under *Terry* for the frisk for weapons in this case.

When Unverzagt came out of the men's room and upon demand took his hands out of his pockets, he withdrew his revolver. Carrying a concealed weapon is a felony under Nebraska law. R.R.S. Neb. 28–1001. Thus it is clear that probable cause existed for the arrest of the defendant for carrying a concealed weapon immediately upon his display of the revolver. Under Nebraska law, citizens are authorized to make an arrest for a felony committed in their presence. R.R.S. Neb. 29–402.[1]

In United States v. Bonds, 8 Cir., 422 F.2d 660 (February 27, 1970), we stated:

"Under Fourth Amendment theory, however, a reviewing court must make an objective evaluation of the facts and circumstances surrounding the ar-

1. Postal inspectors under 18 U.S.C.A. § 3061 are given power to make arrests for postal offenses upon probable cause but are given no power to make arrests for state offenses by either state or federal statute.

rest of an individual. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889. Thus, if probable cause exists for the arrest of a person for a felony at the time of the arrest, the search incident to the arrest will be upheld if reasonable in scope, although the officer did not accurately name the offense for which the arrest was made. McNeely v. United States, 8 Cir., 353 F.2d 913, 918; Klingler v. United States, 8 Cir., 409 F.2d 299, 305–306. See also In re Kiser, 8 Cir., 419 F.2d 1134; United States v. Skinner, 8 Cir., 412 F.2d 98, 102."

In our present case, as above pointed out, probable cause for arrest existed at the time that the defendant displayed his revolver. This occurred before any search was made of his person. We hold that the search that was made was incident to a legal arrest and that defendant's Fourth Amendment rights were not violated by the search. The court properly refused to suppress the money orders seized after arrest.

The judgment of conviction is affirmed.