Vincent J. SANTONI, Jr., Plaintiff

v.

John E. POTTER, et al., Defendants

No. 02–CV–3–B–S.

United States District Court,
D. Maine.

Aug. 19, 2002.

Cynthia A. Dill, Esq., South Portland, ME, for Vincent James Santoni, Jr., plaintiff.

David R. Collins, Office of the U.S. Attorney, Portland, ME, Peter T. Marchesi, Esq., Wheeler & Arey, P.A., Waterville, for Postmaster General and CEO, United States Postal Service, Micheal Desrosiers, Sheriff, Somerset County, Randy Wing, defendants.

**ORDER**

SINGAL, District Judge.

The former postmaster of Solon, Maine, claims that by investigating and arresting him for indecent exposure, a federal postal inspector and cooperating local sheriffs violated his federal constitutional rights and committed a variety of torts against him. Presently before the Court is the federal defendants' Motion to Dismiss or for Summary Judgment (Docket # 6). For the following reasons, the Court GRANTS Defendants' Motion.

**I. LEGAL STANDARD**

Two Defendants moved to dismiss for failure to state a claim or, in the alternative, for summary judgment. *See* Fed. R.Civ.P. 12(b)(6); 56(c). With their pleading, they submitted a statement of material facts and supporting record evidence, in accordance with the local rule governing summary judgment procedure. *See* D. Me. Loc. R. 56. If the parties submit evidence outside the pleadings in conjunction with a motion to dismiss pursuant to Rule 12(b)(6), the Court may not consider that evidence without converting the motion to one for summary judgment. *See* Fed.R.Civ.P. 12(b); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir.1993). Before converting to summary judgment, however, the Court must ensure that the nonmoving party has notice of the impending conversion and an opportunity to present its own factual material. *See Collier v. City of Chicopee*, 158 F.3d 601, 603 (1st Cir.1998) (citing Fed.R.Civ.P. 12(b)).

Plaintiff had notice that the Court might treat Defendants' Motion as one for summary judgment in that Defendants styled their pleading "Motion to Dismiss or, in the Alternative, for Summary Judgment" and submitted a statement of material facts. *See id.* (observing that a party has adequate constructive notice of impending conversion when the movant at-

taches outside materials to his pleadings). Plaintiff also had an opportunity to, and did, present factual evidence in his favor. He responded with his own statement of material facts and did not request more time to marshal his factual evidence by, for example, moving for further discovery pursuant to Rule 56(f). *See* Fed.R.Civ.P. 56(f). Thus, the Court treats Defendants' Motion as a motion for summary judgment.

Summary judgment is appropriate where the record developed by the parties shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Defendants must make "a preliminary showing that no genuine issue of material fact exists." *Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996) (quoting *National Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995)). If they succeed in doing so, Plaintiff must "contradict the showing by pointing to specific facts demonstrating that there is, indeed a trialworthy issue." *Id.* A factual dispute is "genuine" or "trialworthy" "only if a reasonable jury could resolve it in favor of either party." *Basic Controlex Corp. v. Klockner Moeller Corp.,* 202 F.3d 450, 453 (1st Cir.2000). According to the parties' submissions, the following facts are undisputed.

## II. FACTS

Defendant Michael Desrosiers is a postal inspector for Defendant United States Postal Service ("USPS" or "Postal Service").[1] On August 13, 1999, Desrosiers' supervisor instructed him to investigate various complaints that had been received about Plaintiff Vincent Santoni, who at that time was the postmaster of Solon, Maine. The complaints included allegations that Santoni had acted inappropriately toward female customers and, in particular, that he had exposed himself to a fifteen-year-old girl named Heather M.[2]

In response, Desrosiers gathered information from several sources. On August 16, he interviewed Heather, who reported that around midday on July 15, 1999, she was riding her bicycle across a bridge near the Solon post office and heard someone call her name.[3] She looked around and recognized Santoni, standing by the water's edge with his pants down to his knees and his hands on his exposed penis. Heather also told Desrosiers that Santoni had been making inappropriate sexual comments and gestures to her for a couple of years at the post office. Heather's mother, who was present during the interview, told Desrosiers that Santoni had also made inappropriate comments to her at the post office and that other women in town had had similar experiences. Desrosiers later reduced Heather's interview to a written statement, which Heather reviewed and signed to verify its accuracy.

Desrosiers subsequently interviewed other female residents of Solon and a nearby town, who told him that Santoni had touched them and subjected them to innuendo and other inappropriate comments at the post office. Desrosiers also learned

---

1. The named Defendant is actually the postmaster general and CEO of the USPS, John Potter. Both parties treat the claims against Defendant Potter as claims against the USPS. For the sake of simplicity, the Court refers to this party as "Defendant USPS."

2. Both parties refer to this girl simply as "Heather M." to protect her privacy.

3. Santoni objects that Heather's report, which Defendants introduced through Desrosiers' affidavit, is hearsay. It is not hearsay, however, because for purposes of this Motion, the truth of Heather's story is irrelevant. *See* F.R.E. 801(c). The Court considers her report only as evidence of the information Desrosiers obtained during his investigation, of which Desrosiers had personal knowledge and is competent to testify.

that on August 9, 1999, one of his colleagues had interviewed Santoni, and during that interview, Santoni had confirmed certain non-incriminating details of Heather's story. For example, he admitted that he drove past Heather on July 15 while she was riding her bicycle.[4] Desrosiers' coworker also said that Santoni had denied ever exposing himself to Heather.

On September 8, 1999, Desrosiers reported the results of his investigation to Somerset County Assistant District Attorney Andrew Benson. At Benson's request, Desrosiers arranged for a fellow postal inspector to conduct a voluntary polygraph examination of Heather. After the examination, the examiner reported to Desrosiers his finding that "no deception [was] indicated" and prepared a written report in which he opined that Heather had answered questions about the July 15, 1999, incident truthfully. (*See* Statement of Facts, Desrosiers Declaration at Ex. 4 (Docket # 7).) After receiving the polygraph results, Desrosiers again discussed the case with ADA Benson.

On October 5, Desrosiers took an affidavit and a request for a complaint and an arrest warrant to the state district court in Skowhegan, Maine. The affidavit reported the details of Desrosiers' interview with Heather and that she had passed a polygraph examination. The affidavit further identified the affiant as a postal inspector and asserted that he had probable cause to believe that Santoni had committed the state law offense of "indecent conduct," in violation of 17–A M.R.S.A. § 854. The district court clerk issued a criminal complaint against Santoni for violating the

indecent conduct statute and a corresponding arrest warrant. Armed with the warrant and accompanied by Defendant Randy Wing, a local deputy sheriff, Desrosiers proceeded to Santoni's home and arrested him. Santoni was tried in Skowhegan District Court on April 21, 2000, and was acquitted as a matter of law.

On January 3, 2002, Santoni filed an eighteen-count complaint in this Court against the postmaster general and CEO of the USPS, Desrosiers, Wing, and Sheriff Barry DeLong. He sued the USPS pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671 *et seq.*, claiming it was liable to him for unlawful arrest (Count I), abuse of process (Count II), malicious prosecution (Count III), false imprisonment (Count IV), intentional and/or negligent infliction of emotional distress (Count V), assault (Count VI), battery (Count VII), invasion of privacy (Count VIII), and negligent supervision and training (Count IX). He sued Desrosiers in his individual capacity for violations of the First (Count X), Fourth (Count XI), and Fifth (Count XII) Amendments to the United States Constitution, actionable pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). He brought analogous Fourth Amendment claims against Wing and DeLong pursuant to 42 U.S.C. § 1983 (Counts XIV and XV). Finally, he claimed that all four Defendants had engaged in a civil conspiracy to violate his federal and state civil rights (Count XVII).[5] On April 8, 2002, Desrosiers and the USPS (together, the "Federal Defen-

---

**4.** Again, Santoni interposes a hearsay objection to Desrosiers using his own affidavit to introduce the contents of a conversation between Santoni and another postal employee. However, the affidavit is not hearsay to the extent it seeks to establish what Desrosiers learned during his investigation. The Court will not consider the affidavit to prove either

the truth of Santoni's statements at the interview or the truth of the interviewer's report that Santoni made those statements.

**5.** The three remaining counts (Counts XIII, XVI and XVIII) are requests for specialized remedies and do not state independent bases for relief.

dants") moved to dismiss or for summary judgment on all of Plaintiff's claims.

## III. DISCUSSION

Plaintiff contends that by investigating and arresting him for a purely state law offense, Defendant Desrosiers disregarded the constraints on his own authority as a federal law enforcement officer. He further theorizes that Defendant Desrosiers purposely exceeded his authority in retaliation for certain unspecified complaints that Plaintiff had made to higher-ups in the USPS. Plaintiff's characterization of events leads to various constitutional and tort claims, the elements of which overlap significantly. In order to minimize redundancy, therefore, the Court begins with several preliminary determinations upon which most of Plaintiff's claims hinge.

### A. Preliminary Determinations

#### 1. Federal Law Authorized Defendant Desrosiers' Investigation

Plaintiff characterizes Defendant Desrosiers' investigation into his off-site conduct, which at most amounted to a minor state law offense, exceeded his statutory authority. In general, Defendant Desrosiers' employer, Defendant USPS, has the authority "to investigate postal offenses and civil matters relating to the Postal Service." 39 U.S.C. § 404(a)(7). It exercises this authority primarily through its Postal Inspection Service, the duties of which include "[e]nforcing laws related to the Postal Service, the mails, other postal offenses and other laws of the United States." 39 C.F.R. § 224.3(b)(2). Defendant argues that the Court should construe the term "postal offense" broadly enough to encompass any off-site criminal conduct by postal employees that could impact the integrity of the Postal Service and postal employees' ability to do their jobs safely.

 However, it is not necessary to deem Plaintiff's alleged indecent exposure a "postal offense" in order to conclude that Defendant Desrosiers nevertheless had the authority to investigate the allegations against him. Some of the women who complained that Plaintiff had acted inappropriately toward them claimed that he did so at the post office, and the primary complainant in this investigation, Heather, said that she knew Plaintiff from her frequent visits to collect mail from her family's post office box. These allegations at least raise some suspicion about whether Plaintiff might have been jeopardizing the safety and well-being of female customers of the post office.

In addition to investigating postal offenses, postal inspectors are responsible for "protecting ... employees ... and people on postal premises." 39 C.F.R. § 224.3(b)(1). They also have the authority to enforce regulations prohibiting discrimination on the basis of sex in the provision of postal services. 39 C.F.R. § 232.1(m), (q). Finally, postal regulations appear to authorize postal inspectors to investigate conduct that violates state law in that they are responsible for "carrying out investigations and presenting evidence to ... state and local authorities." 39 C.F.R. § 224.3(b)(4). Taken together, these regulations leave little doubt that Defendant Desrosiers acted within the scope of his investigative authority when he investigated allegations that Plaintiff had mistreated female postal customers generally and, specifically, that he had exposed himself to a teenage girl whom he knew from her visits to the post office.

Plaintiff also objects that Defendant Desrosiers used certain investigative techniques that were beyond his authority. However, he was authorized by federal statute to take the sworn statements of witnesses. 39 U.S.C. § 1010. Moreover, his investigation appears to have relied exclusively on *voluntary* interviews and

Heather's *voluntary* submission to a polygraph. In this sense, he did little or nothing that a private investigator interested in Plaintiff's conduct could not have done, and there is no basis for concluding that his techniques were improper.

### 2. Neither State nor Federal Law Authorized Postal Inspectors to Make Arrests for Violations of State Law

■ Although postal inspectors are authorized to *investigate* a potentially broad range of conduct that qualifies as a postal offense or threatens the safety of postal customers and personnel, the *arrest* authority of postal inspectors is considerably narrower and more precisely defined. The federal arrest powers of postal inspectors are limited to

(1) serv[ing] warrants and subpoenas *issued under the authority of the United States;*

(2) mak[ing] arrests without warrant *for offenses against the United States* committed in their presence;

(3) mak[ing] arrests without warrant *for felonies cognizable under the laws of the*

United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such a felony . . . .

18 U.S.C. § 3061(a) (emphases added); 39 C.F.R. § 233.1(a). Accordingly, Defendants acknowledge that federal law did not give Defendant Desrosiers authority to execute warrants or make arrests for purely state law crimes. *See United States v. Unverzagt,* 424 F.2d 396, 398 n. 1 (8th Cir.1970).

■ Even if federal law restricts postal inspectors to making arrests for federal crimes, the Maine legislature is free to authorize federal officers to make arrests for violations of Maine state law. *See, e.g., United States v. Johnson,* 815 F.2d 309, 312–14 (5th Cir.1987) (observing that Texas statute gives secret service officers authority to arrest for violations of Texas law). Maine law specifically permits certain "federal officers" to make arrests to enforce state law; however, postal inspectors are not among the designated authorized officers. 25 M.R.S.A. § 1502–A.[6] Thus, the Court concludes that the Maine

---

6. **25 M.R.S.A. § 1502–A.**

 1. **Definition**. For purposes of this section, "federal officers" means the following persons who are authorized to carry firearms in the performance of their duties as federal law enforcement employees or officers:

 A. Special Agents of the Immigration and Naturalization Service of the Department of Justice;

 B. Immigration Inspectors, including Deportation Officers and Immigration Examiners when acting in the capacity of Immigration Inspectors of the Immigration and Naturalization Service of the Department of Justice;

 C. Border Patrol Agents of the Immigration and Naturalization Service of the Department of Justice;

 D. Officers of the United States Customs Service of the Department of the Treasury; and

 E. Any of the officers listed in this subsection who are assigned to or are acting in concert with a task force . . . .

 2. **Powers**. . . . [A] federal officer has the power to enforce state law when one or more of the following situations exist.

 A. The federal officer has an articulable and reasonable suspicion to believe that the person to be stopped has committed, is committing or is about to commit a state crime or has probable cause to believe that the person to be arrested has committed or is committing a state crime.

 B. The federal officer is providing assistance to a state, county or municipal law enforcement officer in an emergency or at the request of the state, county or municipal law enforcement officer.

 C. The federal officer has received information from an authoritative source that a state, county or municipal law enforcement officer holds a warrant for the person's arrest.

legislature has opted not to authorize postal inspectors to make arrests for violations of state law.

### 3. Plaintiff's Arrest Was Valid Under Maine Law

Even though neither federal nor state law gave Defendant Desrosiers authority *as a postal inspector* to arrest Plaintiff for a state law crime, the arrest was nevertheless valid if Defendant Desrosiers had the authority to participate in his capacity as a private citizen. *See Unverzagt*, 424 F.2d at 398 (considering whether a warrantless arrest by a postal inspector, not authorized under federal law, was nevertheless valid as a citizen's arrest); *Alexander v. United States*, 390 F.2d 101, 105–07 (5th Cir.1968) (same); *see also Johnson*, 815 F.2d at 313 (observing that secret service agent could make state law arrest in any situation where state law authorized a "private person" to do so). Defendant Desrosiers participated in the arrest at two significant junctures.

■ First, Defendant Desrosiers swore out an affidavit before a clerk of a state district court, who the parties agree was authorized to, and did, issue a criminal complaint and warrant for Plaintiff's arrest. A district court clerk may prepare a complaint for a Class D or E crime such as the one Plaintiff was charged with, "upon the request of any law enforcement officer." 15 M.R.S.A. § 708. Although the term "law enforcement officer" is not defined for purposes of Title 15, the phrase "*any* law enforcement officer" appears broad enough to encompass federal law enforcement officers such as postal inspectors. The provision discussed above that specifies the "federal officers" who may make arrests in Maine places *no restriction* on who may swear out criminal complaints, *see* 25 M.R.S.A. § 1502–A, and the Court has found no other indication that the phrase "*any* law enforcement officer"

should be read to exclude federal law enforcement officers from serving as complainants in criminal matters.

Moreover, the clerk may issue a complaint to someone other than a law enforcement officer with the approval of the district attorney or his designee. 15 M.R.S.A. § 708. It is undisputed that Defendant Desrosiers discussed his investigation with ADA Benson before seeking the warrant and that he arranged for Heather to take a polygraph examination at Benson's request. It is also undisputed that the district attorney's office prosecuted Plaintiff on the charges reflected in the criminal complaint all the way to trial. There is no suggestion that any representative of the district attorney's office was surprised or troubled by the news that Defendant Desrosiers had sworn out a complaint against Plaintiff. The only reasonable inference from these facts is that the district attorney's office did, in fact, approve the prosecution. Thus, Defendant Desrosiers had statutory authority to swear out and receive the complaint, either as a law enforcement officer or as a private citizen under the direction of the district attorney's office.

■ Second, Defendant Desrosiers executed the warrant and arrested Plaintiff. Once the arrest warrant had issued, only an "authorized law enforcement officer" could execute it. (*See* Statement of Facts, Desrosiers Declaration at Ex. 6 (Docket # 7).); Me. R.Crim. P. 4(c)(1) ("The warrant shall be executed by any officer authorized by law.") As established above, Defendant Desrosiers was not "authorized" under Maine law to execute the warrant. However, Defendant Wing accompanied him to Plaintiff's house to accomplish the arrest. Maine law clearly permitted Defendant Wing, as a deputy sheriff, to execute outstanding arrest warrants. 15 M.R.S.A. § 602. In fact, it imposed a duty on him to do so. *Id.* It would

be elevating form over substance to conclude that the validity of the arrest depended on which of the two men uttered the words "You are under arrest," or placed Plaintiff in handcuffs. Plaintiff was arrested on the basis of a validly issued arrest warrant in the presence of a county law enforcement officer who was required to execute that warrant.[7] That Defendant Desrosiers was also present, even if he only had as much state law enforcement authority as an ordinary citizen, does not invalidate the arrest.

### 4. The Warrant Was Based on Probable Cause

Heather reported to Defendant Desrosiers that Plaintiff had purposely attracted her attention while his pants were down and his hands were on his groin area. It is undisputed that Heather submitted to a polygraph examination based on this report, and the examiner concluded her report was truthful. There is no suggestion that Defendant Desrosiers fabricated or mischaracterized any of the information in his affidavit in support of the complaint and arrest warrant. The Court agrees that the affidavit demonstrated probable cause to believe that Plaintiff had violated 17–A M.R.S.A. § 854, and Plaintiff does not contend otherwise.

### B. Application to Plaintiff's Claims

Having determined that Defendant Desrosiers engaged in an authorized investigation that established probable cause to believe Plaintiff had violated state law and led to a valid warrant and arrest, the Court now turns to consider how those determinations impact Plaintiff's claims against the Federal Defendants.

### 1. Claims Against Defendant Desrosiers (*Bivens* action)

Plaintiff's constitutional claims against Defendant Desrosiers in his individual capacity are actionable pursuant to the Supreme Court's opinion in *Bivens*, which recognized a damages action against individuals acting under color of federal law who violate a claimant's federal statutory or constitutional rights. *Bivens*, 403 U.S. at 389, 91 S.Ct. 1999. There is no dispute that Defendant Desrosiers, as a federal postal inspector, acted under color of federal law. Plaintiff claims that Defendant Desrosiers violated his rights under the First, Fourth and Fifth Amendments to the Constitution.

#### a. Fourth Amendment

 Defendants Desrosiers and Wing arrested Plaintiff at home. Because the protections of the Fourth Amendment are at their height when the government seeks to intrude on an individual in his home, probable cause alone is insufficient to justify an in-home arrest on felony charges. *See Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In addition to probable cause, an officer must have an arrest warrant, exigent circumstances, or consent to enter. *Id.* at 576, 100 S.Ct. 1371; *Buenrostro v. Collazo*, 973 F.2d 39, 43 (1st Cir.1992) (citing *Payton*, 445 U.S. at 590, 100 S.Ct. 1371).[8] As established above, however,

---

**7.** Plaintiff seeks to minimize Defendant Wing's role in the arrest with an affidavit swearing that Plaintiff heard Defendant Wing tell his attorney, "I am not the arresting officer[. T]he sheriff's department has nothing to do with this. This is the Desrosier's [sic] show." (*See* Santoni Aff. at ¶ 3 (Docket # 11).) Defendant Wing's reluctance to participate does not undercut the validity of the arrest, however, since he was aware of an outstanding arrest warrant, valid on its face, and had a legally imposed duty to execute it. 15 M.R.S.A. § 602.

**8.** The protections of the Fourth Amendment against warrantless in-home arrests are even stronger when, as here, the charged crime is a misdemeanor rather than a felony. *See*

Plaintiff was arrested on a validly issued and validly executed state arrest warrant. Thus, Defendant Desrosiers had both probable cause and a warrant, and the arrest did not violate the Fourth Amendment.

■ Alternatively, even if the Court had found the arrest warrant invalid under state law, Defendant Desrosiers nevertheless would be entitled to qualified immunity on Plaintiff's Fourth Amendment claim. A government official enjoys immunity from individual liability unless (1) he violated a constitutional right, (2) that right was clearly established at the time of the violation, and (3) an objectively reasonable official in Defendant's position would have known that his or her conduct violated that right. *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 141 (1st Cir.2001), *cert. denied* —— U.S. ——, 122 S.Ct. 548, 151 L.Ed.2d 424 (2001).[9]

■ Defendant Desrosiers would enjoy qualified immunity under the third prong of the analysis because a reasonable official in his position would not have known that the warrant was invalid. Plaintiff has adduced no evidence suggesting that Defendant Desrosiers had actual knowledge that he was acting outside the scope of his law enforcement authority. Although a reasonable postal inspector would be presumed to know the scope of his own responsibilities under federal law, here Defendant Desrosiers' arrest authority turned on interpretations of state law. Defendant Desrosiers cooperated with the local district attorney's and sheriff's offices during the investigation, before he sought the warrant. There is no evidence that he tried to misrepresent his authority to the state court; in fact, his affidavit in support

of the warrant identified him in the first paragraph as a federal postal inspector and indicated that he sought the warrant for a violation of state law. An authorized Maine district court official issued the warrant knowing this information. Finally, a deputy sheriff accompanied him to execute the warrant. It was reasonable for him to rely on the conduct of these three state officials—in particular, the clerk who issued the arrest warrant—to believe that Maine law authorized him to arrest Plaintiff for a violation of state criminal law.

b. First Amendment

■ Plaintiff also alleges that Defendant Desrosiers instituted and pursued this investigation against him in retaliation for complaints Plaintiff made about the conduct of his supervisors. However, Plaintiff has placed no evidence in the summary judgment record regarding the complaints he made. This failure to identify the protected conduct is fatal to his First Amendment claim. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995) ("As to issues on which the summary judgment target bears the ultimate burden of proof, [he] ... must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.")

c. Fifth Amendment

■ Plaintiff's Fifth Amendment substantive due process claim similarly fails. Plaintiff contends that Defendant Desrosiers' conduct "shocks the conscience" or was "arbitrary, capricious or without a rational basis" and, thus, violates the Due Process Clause of the Fifth Amendment.

---

*Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).

**9.** The qualified immunity analysis in a *Bivens* action is identical to the analogous inquiry in

actions pursuant to 42 U.S.C. § 1983. *Abreu–Guzman v. Ford,* 241 F.3d 69, 73 (1st Cir. 2001).

(*See* Pl.'s Objection at 7 (Docket # 9).) The specific conscience-shocking behavior to which Plaintiff points in his legal argument includes "handcuffing plaintiff at his home and arresting him, false statements to third persons about criminal conduct plaintiff supposedly engaged in the past, exceeding his authority to investigate postal crimes by interviewing and taking oaths from people about alleged sexual misconduct, the unauthorized use of polygraphs and ultimately termination from his job." (*See id.*)

As discussed above, however, Plaintiff's in-home arrest was authorized by a valid arrest warrant and there is no suggestion that Defendant Desrosiers handcuffed Plaintiff inappropriately or engaged in any other outrageous behavior during the arrest. Moreover, the Court found that his investigation comported with his investigative authority, and there is nothing conscience-shocking about conducting voluntary interviews with female town residents who claimed that they had been the victims of Plaintiff's misconduct. Finally, Plaintiff has pointed to no competent evidence that Defendant Desrosiers made false statements about him to third parties.[10] Plaintiff simply has failed to adduce facts that would support a substantive due process claim, and Defendant Desrosiers is entitled to summary judgment on this claim as well.

**C. Claims Against Defendant USPS (Federal Tort Claims)**

■ Plaintiff also brought several tort claims against Defendant USPS pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The FTCA waives the federal government's sovereign immunity for the negligent torts of its agents. *See* 28 U.S.C. § 2674. Although Defendant USPS is a quasi-public entity that can "sue and be sued," any tort claims against the USPS must be brought pursuant to the FTCA and are subject to its restrictions. *Davric Maine Corp. v. USPS*, 238 F.3d 58, 61–64 (1st Cir.2001) (citing 39 U.S.C. § 401(c)). Defendant Desrosiers is the only USPS agent about whom either party has submitted any facts for summary judgment purposes. Therefore, Defendant USPS' liability, if any, must stem from the actions of Defendant Desrosiers.

**1. Discretionary Function Immunity**

■ Initially, the Court must consider whether Plaintiff's claims fall within any of the FTCA's exceptions—that is, those claims for which the federal government has explicitly retained its immunity. *See* 28 U.S.C. § 2680. If an exception applies, the government agency is completely immune, and the Court lacks subject matter jurisdiction to consider the merits of Plaintiff's claims. *Irving v. United States*, 162 F.3d 154, 160 (1st Cir.1998); *Magee v. United States*, 121 F.3d 1, 3 (1st Cir.1997). Of particular interest here is the so-called "discretionary function exception," which preserves the government's immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

---

10. The only evidence in this regard is Plaintiff's allegation in his verified Complaint that Defendant Desrosiers stated to Heather and her mother during their interviews that "Santoni had been charged with a similar offense five years earlier." (*See* Compl. at ¶ 15 (Docket # 1).) There is no indication that Santoni was present at this interview; if he was not, he does not have personal knowledge of statements Defendant Desrosiers made, and is not competent to testify to them for summary judgment purposes. *See* Fed. R.Civ.P. 56(e) (requiring that summary judgment affidavits be made on personal knowledge).

The Supreme Court has adopted a two-step inquiry for determining whether a falls within discretionary function exception: First, was the challenged action a matter of choice for the acting official? Second, was the official's discretion based in policy judgment? *Irving*, 162 F.3d at 162 (citing *United States v. Gaubert*, 499 U.S. 315, 322–23, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991)). To determine whether an act involved choice or discretion, courts typically look to the person's official responsibilities as they are described in statutes, regulations, policy manuals, and so forth. *See, e.g., Berkovitz v. United States*, 486 U.S. 531, 540, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) (federal vaccine licensing statutes and regulations); *Gaubert*, 499 U.S. at 324–25, 111 S.Ct. 1267; *Magee*, 121 F.3d at 4 (veterans' hospital policy manual); *Irving*, 162 F.3d at 164 (occupational safety and health statute and regulations). An action is not discretionary " 'if a federal statute, regulation or policy specifically prescribes a course of action for [an official] to follow, because [the official] has no rightful option but to adhere to the directive.' " *Magee*, 121 F.3d at 4 (quoting *Gaubert*, 499 U.S. at 322, 111 S.Ct. 1267).

As a general matter, "although law enforcement agents have a mandatory duty to enforce the law, decisions as to how best to fulfill that duty are protected by the discretionary function exception." *Horta v. Sullivan*, 4 F.3d 2, 21 (1st Cir. 1993); *accord Pooler v. United States*, 787 F.2d 868, 871 (3d Cir.1986) ("Decision making as to investigation and enforcement ... are discretionary judgments.") (citations omitted). However, this rule of thumb assumes that the law enforcement official is acting within a range of avail-able choices. *See Attallah v. United States*, 955 F.2d 776, 783 (1st Cir.1992) ("The inquiry focuses on the range of action available to the government employee allegedly at fault."); *Medina v. United States*, 259 F.3d 220, 226 (4th Cir.2001); *Pooler*, 787 F.2d at 872. In contrast, the federal government is not entitled to discretionary function immunity if the law enforcement official violates federal law or acts outside the scope of his discretion. *See Horta*, 4 F.3d at 25; *Medina*, 259 F.3d at 225 ("Federal officials do not possess discretion to violate constitutional rights or federal statutes.") (citations omitted). As discussed above, Defendant Desrosiers' official duties included investigating matters that might affect the safety of postal customers and making arrests for violations of federal law, and he had discretion to decide how best to perform those duties. Making an arrest for a violation of state law, however, was not within the scope of his duties or authority as a postal inspector. Thus, the Court cannot conclude that arresting Plaintiff was a "discretionary act"; if Defendant Desrosiers committed a tort in doing so, the government does not enjoy discretionary function immunity.[11]

### 2. Merits of Tort Claims

Because Defendant USPS is not immune from Plaintiff's claims, it is liable for the torts of its agents "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The state tort law of the jurisdiction in which the allegedly tortious conduct occurred provides the governing substantive law. 28 U.S.C. § 1346(b)(1); *see Davric*, 238 F.3d at 64 (applying

---

**11.** The Court's conclusion that this particular arrest was valid because Defendant Desrosiers acted within the law applicable to ordinary citizens does not undercut this analysis; discretionary function immunity is a genre of official immunity and must turn on his discretion as a federal official rather than the range of action available to him as a private citizen.

Maine's substantive law of tort liability to FTCA claims).

### a. Malicious Prosecution

■ To succeed on his malicious prosecution claim, Plaintiff must show that "criminal proceedings were instituted against him without probable cause and with malice [and] that he received a favorable termination of the proceedings." *Nadeau v. State,* 395 A.2d 107, 116 (Me.1978). As noted above, Plaintiff has not seriously contested that the criminal complaint issued by the Maine district court clerk was based on probable cause. Furthermore, although his theory seems to be that Defendant Desrosiers' malice sprung from a desire to punish Plaintiff for speaking out against his superiors, Plaintiff has put no evidence in the summary judgment record about what his complaints were or that Defendant Desrosiers was even aware of them. Thus, no reasonable jury could conclude that Defendant Desrosiers acted without probable cause or with malice, and Plaintiff has failed to raise a genuine issue of material fact on his malicious prosecution claim.

### b. Abuse of Process

■ The related tort of abuse of process differs from malicious prosecution in that while the latter "lies where there is no basis for an entire claim, abuse of process 'covers the allegedly improper use of individual legal procedures after a suit has been filed properly.'" *Pepperell Trust Co. v. Mountain Heir Fin. Corp.,* 708 A.2d 651, 656 n. 1 (Me.1998) (quoting *Simon v. Navon,* 71 F.3d 9, 15 (1st Cir.1995)). The second element of an abuse of process claim is "the existence of an ulterior motive." *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell,* 708 A.2d 283, 286 (Me.1998). Plaintiff has pointed to no evidence from which a reasonable jury could find in his favor on either element. First, there is no evidence that Defendant Desro-

siers misused—or even used—any type of legal process against Plaintiff after the case had been commenced. Second, Plaintiff would apparently argue that Defendant Desrosiers' "ulterior motive," like his malice, stemmed from Plaintiff's complaints to higher-ups. His proof of an ulterior motive fails for lack of evidence in the summary judgment record. Thus, Defendant USPS is entitled to summary judgment on Plaintiff's abuse of process claim as well.

### c. Assault, Battery, False Imprisonment, Unlawful Arrest

■ Four of Plaintiff's tort claims turn on the lawfulness of his arrest: assault, battery, false imprisonment and unlawful arrest. There are at least two theories by which a law enforcement officer could commit the torts of assault and battery during an arrest: First, a false arrest in and of itself constitutes assault and battery; and second, the use of excessive force during or after taking an individual into custody, lawfully or unlawfully, can give rise to liability for assault and battery. *Bale v. Ryder,* 290 A.2d 359, 360 (Me.1972). Here there is no evidence whatsoever that Defendant Desrosiers used excessive force during or after the arrest; presumably, Plaintiff proceeds under the theory that the arrest was unlawful. Similarly, for Defendant Desrosiers' conduct to be actionable as either false imprisonment or unlawful arrest, "the authority upon which [P]laintiff is confined must be unlawful." *See Nadeau,* 395 A.2d at 116; *see also Jedzierowski v. Jordan,* 157 Me. 352, 172 A.2d 636, 637 (1961) ("It has often been held that false arrest is but one means of committing false imprisonment."). Here, Defendants Desrosiers and Wing arrested Plaintiff and took him into custody on the basis of a valid state law warrant establishing a lawful basis for his confinement. That the arrest was lawful is fatal to all four of these claims.

#### d. Intentional Infliction of Emotional Distress

 To succeed on his claim for intentional infliction of emotional distress, Plaintiff must show that

(1) [Defendant Desrosiers] intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [his] conduct;

(2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;

(3) the actions of the defendant caused [Plaintiff's] emotional distress; and

(4) the emotional distress suffered by [Plaintiff] was so severe that no reasonable person could be expected to endure it.

*Curtis v. Porter*, 784 A.2d 18, 22–23 (Me. 2001) (internal quotations omitted). Just as he failed to produce evidence of conscience-shocking behavior that would support his substantive due process claim, simply has not pointed to any conduct by Defendant Desrosiers that a reasonable jury could characterize as "atrocious" or "exceed[ing] all possible bounds of decency." Defendant USPS is entitled to judgment on this claim.

#### e. Negligent Supervision

Plaintiff alleges, without explanation, a claim against Defendant USPS for negligent supervision. The Maine Law Court has never recognized the tort of negligent supervision. *Napieralski v. Unity Church of Greater Portland*, 802 A.2d 391, 392 (2002). The Court is loathe to recognize a new state tort in advance of the state's highest court in any case, and particularly will not do so here, when Plaintiff has not explained his theory of how the tort applies to these facts. Defendant USPS is entitled to judgment as a matter of law on Plaintiff's negligent supervision claim.

#### f. Invasion of Privacy

The tort of invasion of privacy comprises four distinct types of tortious conduct: (1) unreasonable intrusion on the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. Restatement (Second) of Torts § 652A. Plaintiff has neither identified the theory on which he relies nor explained how the facts support his chosen theory. "A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *See Muniz–Cabrero v. Ruiz*, 23 F.3d 607, 609 (1st Cir.1994). The Court will not speculate. Because Plaintiff has failed to explain his invasion of privacy claim, Defendant USPS is entitled to summary judgment.

#### g. Civil Conspiracy and Negligent Infliction of Emotional Distress

 Finally, Plaintiff's two remaining claims fail because they are contingent on establishing an underlying tort. Civil conspiracy is not an independent tort in Maine. *Potter, Prescott*, 708 A.2d at 286. "[A]bsent the actual commission of some independently recognized tort, a claim for civil liability for conspiracy fails." *Id.* Likewise, the tort of negligent infliction of emotional distress requires either an underlying tort or a "unique relationship" between [P]laintiff and the alleged tortfeasor. *Richards v. Town of Eliot*, 780 A.2d 281, 293 (Me.2001). There is no evidence of a unique relationship between Plaintiff and Defendant Desrosiers that would impose a duty on Defendant Desrosiers to avoid causing Plaintiff emotional distress. *See id.* (finding no special duty of police officer to arrestee that would support claim for negligent infliction of emotional

distress). Thus, because Plaintiff has failed to raise a genuine issue of material fact as to the existence of any underlying tort, Defendant USPS is entitled to summary judgment on both the civil conspiracy and negligent infliction of emotional distress claims.

D. Remaining Counts

The remaining counts against the Federal Defendants are actually requests for damages rather than independent claims for relief. Since these Defendants are entitled to judgment as a matter of law on all Plaintiff's claims, he may not collect damages from them. Therefore, to the extent that Counts XIII (punitive damages) and XVIII (interest, costs and fees) are framed as separate claims, the Court grants the Federal Defendants summary judgment on those counts as well.

IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion and ORDERS summary judgment in favor of Defendants Potter (on behalf of the USPS) and Desrosiers on all counts against them. Specifically, the Court GRANTS summary judgment in favor of Defendant Potter on Counts I through IX, and on Counts XVII and XVIII to the extent that they pertain to him. It GRANTS summary judgment in favor of Defendant Desrosiers on Counts X through XIII, and on Counts XVII and XVIII to the extent they pertain to Defendant Desrosiers.

The Court takes no action on Counts XIV, XV and XVI, or on Counts XVII and XVIII to the extent they pertain to Defendants Wing and DeLong, as those Defendants are not parties to the instant Motion.

SO ORDERED.