Stefan **GOMES** and Paris
**Minor, Plaintiffs**

v.

**UNIVERSITY OF MAINE SYSTEM, Trustees of the University of Maine System in their official Capacities on behalf of the University of Maine System, Peter S. Hoff, individually and as President of the University of Maine Elizabeth J. Allan, individually and as Chair of the Student Conduct Code Committee of the University of Maine, David Fiacco, individually and as Judicial Officer of the Student Conduct Code Committee, Robert Dana, indi-**

vidually and as Dean of Student Affairs at the University of Maine, and Robert E. Whelan, individually and as Chair of the Student Conduct Code Appeals Committee of the University of Maine, Defendants

No. CIV. 03–123–B–W.

United States District Court,
D. Maine.

Feb. 23, 2004.

**120**

Frederick F. Costlow, Richardson, Whitman, Large & Badger, Bangor, ME, Harrison L. Richardson, Richardson, Whitman, Large & Badger, Portland, ME, Mary F. Kellogg, Richardson, Whitman, Large & Badger, Bangor, ME, for Paris Minor, Stefan Gomes, Plaintiffs.

Paul W. Chaiken, Timothy A. Pease, Rudman & Winchell, Bangor, ME, for University of Maine System, Trustees of the University of Maine System, Peter S Hoff, Elizabeth J Allan, David Fiacco, Robert Dana, Robert E Whelan, Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

WOODCOCK, District Judge.

### I. Statement of Facts.

The Plaintiffs, Stefan Gomes and Paris Minor, formerly students at the University of Maine, have filed a cause of action against the University of Maine System, the Trustees of the University of Maine System, and five individuals, Peter S. Hoff, Elizabeth J. Allan, David Fiacco, Robert Dana, and Robert Whelan, individually and in their respective official capacities at the University of Maine. The University subjected the Plaintiffs to discipline for allegedly committing a sexual assault on June 10, 2003. The Complaint contains ten counts, alleging the Defendants committed a number of constitutional, contractual, and tort violations in disciplining the Plaintiffs. The University has moved to dismiss the Complaint.

### II. Legal Standard.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Beegan v. Assoc. Press*, 43 F. Supp.2d 70, 73 (D.Me.1999). As the First Circuit noted, "in the precincts patrolled by Rule 12(b)(6), the demands on the pleader are minimal." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). The Court is required to:

> accept the well-pleaded factual averments of the . . . complaint as true, and construe these facts in the light most flattering to the [plaintiff's] cause . . . exempt[ing] of course, those 'facts' which have since been conclusively contradicted by [plaintiff's] concessions or otherwise, and likewise eschew[ing] any reliance on bald assertions, unsupportable conclusions, and 'opprobrious epithets.'

*Id.* (quoting *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987)). The court grants relief only if the pleading shows "no set of facts which could entitle the plaintiff to relief." *Id.* Nevertheless, the minimal requirements of Rule 12(b)(6) are "not tantamount to nonexistent requirements." *Id.* It remains the plaintiff's obligation to take the steps necessary to "bring his case safely into the next phase of the litigation." *Id.*

## III. Discussion

### A. Count I: Due Process.

Count I of the Complaint attempts to state a claim against all Defendants for a general denial of due process rights under the United States and Maine Constitutions. U.S. Const amend. VI; Me. Const. art. I, § 6–A. After Defendants moved to dismiss Count I, Plaintiffs responded that Count I is "an adjunct to Plaintiffs' claim under 42 U.S.C. § 1983 for federal violations, rather than as a direct constitutional tort claim for an independent remedy." *Pl.'s Reply Mem.* at 2. They also withdrew their claims for separate violations of the Maine constitution or the Maine Civil Rights Act. *Id.* at 2. Finally, they clarified that Count I was intended to give "notice of the factual allegations that underlie the § 1983 claim" found in Count II. *Id.* at 2.

In light of Plaintiffs' response, this Court dismisses Count I, except to the extent it states facts not otherwise pled.[1]

### B. Count II: 42 U.S.C. § 1983.

#### 1. State Constitutional Claim.

Defendants seek to have Count II dismissed to the extent it alleges a violation of state constitutional law under 42 U.S.C. § 1983. *Def.'s Mem.* at 5. Plaintiffs have responded by noting Count II of the Complaint does not allege a state constitutional claim. *Pl.'s Reply Mem.* at 2. Defendant argues that "[b]ecause no such allegation

is made, Plaintiffs' state constitutional claims in Count II must be dismissed." *Def.'s Mem.* at 5. To the contrary, because no allegation is made, no dismissal is necessary.

#### 2. Claims Under The 14th Amendment.

To explain the issues as the parties have framed them, the Court will review the Complaint, the bases of the motion to dismiss, the Plaintiffs' responses, and the Defendants' counter-responses. Count II of the Complaint is directed against Defendants Allan, Fiacco, Hoff, Dana, and Whelan. It alleges each Defendant deprived the Plaintiffs of their substantive and procedural due process rights acting under color of state law and demands declaratory relief and compensatory and other damages. Defendants first move to dismiss Count II to the extent it attempts to state a claim against them in their "official capacity."

#### a. Official Capacity Claims.

■ To sustain a claim against an official in an official capacity, there must be an allegation "that the entity followed a policy or custom" that was unconstitutional. *Burrell v. Hampshire County,* 307 F.3d 1, 7 (1st Cir.2002) ("A damages suit against an official in an official capacity is tantamount to a suit against the entity of which the official is an agent ... and there is no claim here that the entity followed a

---

1. In the Court's view, the Plaintiffs have properly recognized that where there is an adequate statutory remedy for the violation of constitutionally protected rights, a claim for direct relief under the federal Constitution is unavailable. *Carlson v. Green,* 446 U.S. 14, 18–23, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Braintree Baptist Temple v. Holbrook Pub. Sch.,* 616 F.Supp. 81, 88 (D.Mass.1984) (*rev'd* on different grounds by *New Life Baptist Church Acad. v. East Longmeadow,* 885 F.2d 940 (1st Cir.1989)); *see also Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981). Furthermore, the Plaintiffs' state constitutional claim would not be cognizable under 42 U.S.C. § 1983. *Grenier v. Kennebec County,* 748 F.Supp. 908, 913 (D.Me.1990). To pursue a claim for a state constitutional violation, the Plaintiffs must proceed under the Maine Civil Rights Act (MCRA), which requires the party allege (which the Plaintiffs have not) intentional interference by physical force or threat against a person or property. 5 M.R.S.A. §§ 4618–4865, 4682(1–A) (West 2003).

policy or custom or deliberate indifference"); *see Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). An official-capacity claim under § 1983 requires a showing that the government itself was a "moving force" behind the deprivation. *Graham,* 473 U.S. at 166, 105 S.Ct. 3099; *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. New York City Dep't Soc. Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To this end, an essential element of an official-capacity lawsuit is that the entity's policy or custom must have played a part in the violation of federal law. *Hafer,* 502 U.S. at 25, 112 S.Ct. 358; *Graham,* 473 U.S. at 166, 105 S.Ct. 3099; *Monell,* 436 U.S. at 690, 98 S.Ct. 2018; *Burrell,* 307 F.3d at 7. Defendants point to the absence of any such allegation in Count II as fatal to the Plaintiff's claim.

Plaintiffs respond by noting Count II demands injunctive relief against Defendants Hoff, Dana, and Whelan, and monetary relief against all individual Defendants. Because the § 1983 claim is directed against neither the University of Maine as a state entity nor the individual Defendants in their official capacities, *Burrell,* they argue, is inapplicable. *Pl.'s Reply Mem.* at 4. To the extent the Plaintiffs seek monetary damages, it is against the individual Defendants in their individual capacities, not against the State.

In *Will v. Michigan Department of State Police,* the Supreme Court held:

> Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under section 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'

491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099; *Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In *O'Neill v. Baker,* 210 F.3d 41, 47 (1st Cir.2000), the First Circuit stated, "[a] plaintiff may, subject to a number of caveats, obtain injunctive relief against state officials and also, if she sues the officials in their individual capacities, recover monetary relief from them." Focusing on the limitation that a demand for injunctive relief against an individual in his official capacity must be "for prospective relief," *Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304, the Defendants respond that even though a plaintiff may seek to enjoin government action through a § 1983 claim, the remedy the Plaintiffs seek is "prospective in nature" and "not available to remedy past violations." *Def.'s Mem.* at 2. In the Court's view, taking the Plaintiffs' allegations as true, the request for injunctive relief to expunge the adverse actions from their academic records would meet applicable standards for the granting of injunctive relief, since the University's record of discipline, though recorded in the past, has an ongoing and prospective effect.

At oral argument, the University cited *Rivera v. P.R. Aqueduct & Sewers Authority,* 331 F.3d 183, 192 (1st Cir.2003), for the proposition that unless the Plaintiffs allege governmental policy or custom, the § 1983 Count fails to state a claim, even if the sole remedy sought is prospective injunctive relief. But the University takes too much from *Rivera.* In *Rivera,* the First Circuit responded to a demand the plaintiff had made against the governmental entities themselves for declaratory and injunctive relief, seeking an order mandating a job reinstatement and/or transfer. Affirming the district court, the First Circuit held that the claims against the governmental entities must fail because there

was no evidence of any policy or custom that would warrant municipal liability. *Rivera*, 331 F.3d at 192.

Here, the Plaintiffs are requesting injunctive relief, not from the University itself, but from University officials. The First Circuit explored this distinction in *Dirrane v. Brookline Police Department*, 315 F.3d 65, 71–72 (1st Cir.2002). While acknowledging the Supreme Court's "seemingly inconsistent locutions" on this narrow issue, the First Circuit pointed out that the Supreme Court "has repeatedly said that an official who acts unconstitutionally can be enjoined even though the state is immune from damages." 315 F.3d at 71 (citing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714).

If the Plaintiffs are able to sustain their claim that the University's disciplinary action violated their constitutional rights, they would be entitled to demand, and this Court would have the authority to order, University officials expunge the unconstitutional disciplinary action from the Plaintiffs' University records. Further, the Plaintiffs' claim for this limited injunctive relief does not implicate the Eleventh Amendment concerns the Supreme Court discussed in *Edelman v. Jordan*, 415 U.S. 651, 664–65, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Defendants' Motion to Dismiss the official capacity claims in Count II is denied.

**b. Individual Capacity Claims.**

Count II of the Complaint also attempts to state a claim against Defendants (other than the University) in their individual capacities for asserted violations of substantive and procedural due process. The individual Defendants have posited the affirmative defense of qualified immunity. Recognizing that litigation is costly, even though a claim of qualified immunity is an affirmative defense, the

issue may be raised in a motion to dismiss before the commencement of discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Guzman–Rivera v. Rivera–Cruz*, 98 F.3d 664, 667 (1st Cir.1996).

Individual defendants are entitled to qualified immunity for official action unless: (1) their conduct violated the Plaintiffs' constitutional rights; and (2) the law to this effect was clearly established under then-existing law so that a reasonable official would have known that his behavior was unlawful. *Dwan v. City of Boston*, 329 F.3d 275, 278 (1st Cir.2003). Here, the Defendants' Motion to Dismiss asserts that neither the substantive nor procedural due process claims meet the high standard set forth in *Dwan*. The Court will address the substantive and procedural due process claims separately.

**1. Substantive Due Process.**

■ The Fourteenth Amendment provides that "no state shall ... deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. Unlike its procedural sibling, substantive due process "imposes limits on what a state may do regardless of what procedural protection is provided." *Pittsley v. Warish*, 927 F.2d 3, 6 (1st Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991); *see also Grendell v. Gillway*, 974 F.Supp. 46, 50 (D.Me.1997). However, as then-Chief Judge Bryer stated for the First Circuit in *Newman v. Burgin*, "the primary concern of the due process clause is *procedure*, not the substantive merits of a decision." 930 F.2d 955, 961–62 (1st Cir.1991).

The Supreme Court has enunciated alternative tests by which substantive due process claims are to be examined. Under the first test, it is not required that the plaintiffs prove a violation of a specific

liberty or property interest; however, the state's conduct must be such that it "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172–73, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *Pittsley*, 927 F.2d at 6. The First Circuit has found conduct shocking the conscience where state actors engage in extreme or intrusive physical conduct. *E.g., Souza v. Pina*, 53 F.3d 423, 427 (1st Cir.1995); *Harrington v. Almy*, 977 F.2d 37, 43–44 (1st Cir.1992) (reasonable fact-finder could find "conscience shocking" conduct where police officer, who was dismissed on charges of child abuse, was required to take penile plethysmograph as condition of reinstatement); *see also Hinkley v. Baker*, 122 F.Supp.2d 48, 52–53 (D.Me.2000) (discussing "shocks the conscience" standard in teacher sexual abuse cases).

To succeed under the second test, a plaintiff must demonstrate a violation of an identified liberty or property interest protected by the due process clause. *Pittsley*, 927 F.2d at 6. As *Pittsley* explained, such a violation may occur in a number of contexts. 927 F.2d at 6 (citing *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (state provision of medical care to persons with serious medical needs while in state custody); *Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (individual committed to state institution has protected liberty interest in receiving safe living conditions and freedom from unreasonable bodily restraints); *Ingraham v. Wright*, 430 U.S. 651, 673, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) (corporal punishment of student inflicted by public school teacher violates substantive due process); *Landrigan v. Warwick*, 628 F.2d 736, 741–42 (1st Cir.1980) (substantive due process implicated where policeman uses excessive force in apprehension of suspect)).

Both of the alternative tests have been applied to the school setting. "Conscience shocking" behavior in the education context has usually involved physical or sexual abuse or excessive punishment. *See, e.g., Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1077 (11th Cir.2000) (examining coach's action of hitting football player with metal lock, knocking out player's eye); *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1262 (10th Cir.1998) (reviewing school officials' actions in suspending special education student and sending him home alone, even though officials knew he had threatened suicide and had access to firearms); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451 (5th Cir.1994) (considering sexual abuse of student by teacher); *but see Abeyta v. Chama Valley Indep. Sch. Dist.*, 77 F.3d 1253, 1258 (10th Cir.1996) (holding no substantive due process violation when teacher repeatedly called female student "prostitute" and encouraged other students to harass her).

Taking the factual allegations in Counts I and II together, the Complaint alleges the Plaintiffs' due process rights were violated because: (1) they were subjected to discipline for alleged conduct "not within the jurisdiction" of the Student Conduct Code (Student Code), *Complaint* at 2; (2) the Defendants conducted a "fundamentally unfair hearing, which included depriving the Plaintiffs of critical and potentially exculpatory evidence gathered during the investigation, depriving the Plaintiffs of effective assistance of counsel, preventing the Plaintiffs from effectively cross-examining and confronting adverse witnesses, depriving the Plaintiffs of any effective administrative appeal, depriving the Plaintiffs of an impartial tribunal, and imposing severe punishment without substantial evidence," *Complaint* at 6; and (3) the investigation, hearing, and appeal were "conducted in bad faith and sanctions were imposed in bad faith," *Id.*

The allegation that most clearly states a substantive due process claim is the Plaintiffs' allusion to the severity of their punishment, a claim that requires the court to weigh "the severity of the punitive effect ... against the severity of the conduct which occasioned the suspension." *Board of Educ. of Rogers, Ark. v. McCluskey,* 458 U.S. 966, 969, 102 S.Ct. 3469, 73 L.Ed.2d 1273 (1982) (citing *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Mitchell v. Board of Trustees,* 625 F.2d 660, 664 n. 8 (5th Cir.1980); *Demers v. Leominster Sch. Dep't,* 263 F.Supp.2d 195, 206 (D.Mass.2003)). In reviewing the Plaintiffs' allegation, however, this Court is mindful that the Supreme Court has warned against "judicial interposition in the operation of the public school system of the Nation." *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Goss v. Lopez,* 419 U.S. 565, 577, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *see also Dunn v. Fairfield Cmty. High Sch. Dist. No. 225,* 158 F.3d 962, 966 (7th Cir.1998) ("[W]e share the district court's concern about transforming the federal courts into an appellate arm of the schools throughout the country....."). In *Brewer v. Austin Independent School District,* Judge Higginbotham wrote: "Review and revision of a school suspension on substantive due process grounds would only be available in a rare case where there was no 'rational relationship between the punishment and the offense.'" 779 F.2d 260, 264 (5th Cir.1985), *accord Rosa R. v. Connelly,* 889 F.2d 435, 439 (2nd. Cir.1989).

Applying these principles to the instant case, the Plaintiffs' allegations do not "shock the conscience." The University determined the Plaintiffs engaged in sexual abuse of a fellow student and suspended them from the University; the Plaintiffs lost scholarship funds and opportunities as student athletes, and suffered other consequential damages. There is no allegation, however, that either the University or its officers were "physically intrusive or violent" or that the actions struck at the basic fabric of any protected relationship (such as a parent-child relationship). *See Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 623 (1st Cir.2000). Far from "shocking the conscience," the University's decision to suspend the Plaintiffs, once it determined they had sexually abused a fellow student, was well within the substantive due process protections of the Fourteenth Amendment. When the Plaintiffs' allegation of unconstitutionally severe punishment is measured against the *Dwan* criteria, the Complaint simply fails to state a substantive due process claim upon which relief can be granted.

At oral argument, the Plaintiffs claimed their substantive due process rights had been violated, since they had been deprived of a recognized constitutionally recognized property interest—that is, the right to a higher education. The Plaintiffs cited *Graffam v. Town of Harpswell,* 250 F.Supp.2d 1 (D.Me.2003), for this proposition. Pursuit of an education is not a fundamental right or liberty for purposes of substantive due process. *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected"); *Black v. Sullivan,* 561 F.Supp. 1050, 1058 (D.Me.1983) ("A state-subsidized, post-secondary education is not a fundamental constitutional right").

To the extent property interests have been identified in the realm of higher education, they have "generally been assumed rather than found." *Tobin v. University of Me. Sys.,* 59 F.Supp.2d 87, 90 (D.Me. 1999); *see, e.g., Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507,

88 L.Ed.2d 523 (1985) (assuming student enrolled in degree program had property interest in continued enrollment); *Board of Curators of Univ. of Mo. v. Horowitz*, 435 . U.S. 78, 84-85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978) (assuming student had liberty interest in continued enrollment). Assuming the Plaintiffs had a cognizable property or liberty interest in continued enrollment at the University of Maine, *Gorman v. University of Rhode Island*, 837 F.2d 7, 11 (1st Cir.1988), they failed to articulate a viable basis upon which this Court can conclude ·that their substantive due process rights have been violated. The Complaint itself fails to allege factual allegations that would sustain such a conclusion, particularly under the high standards in *Dwan*.

For the foregoing reasons, this Court grants the Defendants' Motion to Dismiss the Plaintiffs' substantive due process claims.

## 2. Procedural Due Process.

### a. Territorial Jurisdiction.

■ Turning to the procedural due process claims, the Plaintiffs allege the University deprived them of their constitutional rights "by subjecting them to a disciplinary proceeding for alleged conduct that was not within the jurisdiction set forth in .the Student Conduct Code." *Complaint* at 29. The Defendants move to dismiss on the ground that this allegation fails to state a claim upon which relief can be granted.

To the extent the Plaintiffs are arguing that even if they committed a sexual assault, the University would be without jurisdiction to discipline them because the assault took place off-campus, the Court rejects this argument.[2] The University's legitimate interest in punishing the student perpetrator of a sexual assault or protecting the student victim does not end at the territorial limits of its campus. *See Slaughter v. Brigham Young Univ.*, 514 F.2d 622 (10th Cir.), *cert. denied*, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 131 (1975) (discipline upheld against graduate student who published material without proper attribution for most part prior to enrollment as student); *Due v. Florida Agric. & Mech. Univ.*, 233 F.Supp. 396 (N.D.Fla. 1963) (contempt of court conviction as basis for university discipline); *Krasnow v. Virginia Polytechnic Inst. & State Univ.*, 414 F.Supp. 55 (W.D.Va.1976) (unlawful drug possession off campus can serve as basis for university discipline).

Furthermore, the Plaintiffs' construction of the Student Code is strained at best.[3]

---

**2.** The Plaintiffs assert the sex was consensual; the University found otherwise. Assuming *arguendo* that the Plaintiffs engaged in consensual sex, the territoriality argument is a nonstarter. Absent circumstances not alleged here, if the Plaintiffs had engaged in a private act of consensual sex with a fellow student, the University could not demonstrate a legitimate governmental interest in disciplining them for doing so, regardless of whether the act took place on campus or off-campus. Thus, the territorial limitation argument assumes the Plaintiffs committed a sexual assault, but asserts the University has no jurisdiction because the assault took place off-campus.

**3.** The Plaintiff attached a copy of the "Policy Manual," containing the Student Code, to their Reply Memorandum. *Pl.'s Reply Mem.* at Ex. A. Neither party attached a copy of the Code to their initial pleadings. *Fudge v. Penthouse Intern., Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988). Nevertheless, the Complaint makes repeated references to the Student Code and, in their response, the Defendants quote from the Code, as well. In ruling on the Motion to Dismiss, the Court concludes that it may consider the contents of the Student Code since the Plaintiffs' claims are inextricably linked to the document and the Defendants have not challenged its authenticity. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.

The Plaintiffs point to the language in the "Jurisdiction" section that reads:

> The University of Maine System Student Conduct Code ... shall apply to the following:
>
> 1. Any person ... who is on the University real property or University-related real property.

From this language, the Plaintiffs argue that the Code is intended to be applied to students only when they are physically present on University or University-related real property. However, this snippet is taken badly out of context. The full sentence reads as follows:

> The University of Maine System Student Conduct Code... shall apply to the following:
>
> 1. Any person(s) registered or enrolled in any course or program offered by the University or any person admitted to the University who is on the University real property or University-related real property for any purpose related to registration or enrollment at the time of the alleged offense.

The full context clarifies that the Student Code applies to registered or enrolled students without limitation and the territorial limitation applies only to admitted students who are at the University to register or enroll.

Moreover, while subpart B of the Student Code explains that jurisdiction applies to events occurring on campus, it also provides that jurisdiction extends to conduct "in which the University can demonstrate a clear and distinct interest as an academic institution regardless of where the conduct occurs and which seriously threatens ... the health or safety of any member of the academic community." The Plaintiffs' argument that the wording of the "Jurisdiction" section of the Student Code prevents the University from disciplining a student for a sexual assault against another student when the assault occurred off-campus runs afoul of the express language of the Student Code and is simply frivolous.

In their memorandum, the Plaintiffs seek to explain their claim by stating that the "University's actual practices regarding disciplinary actions on allegations of off-campus activity between individual students will shed some light on the first, second and fourth parts of the immunity inquiry" and must await "factual development." *Pl.'s Reply Mem.* at 13. The Plaintiffs appear to be arguing that when events potentially subject to discipline take place off-campus, the University has been selective in its enforcement of the Student Code. But this allegation does not appear in the Complaint. *See Gooley*, 851 F.2d at 515 n. 2 ("[R]epresentations in a brief are an impuissant surrogate for a record showing") (quoting *United States v. Kobrosky*, 711 F.2d 449, 457 (1st Cir.1983)). Instead, the Complaint alleges the University was without jurisdiction, not that the University applied its jurisdiction in an arbitrary or discriminatory manner.[4] *Complaint* at 29. The Court grants the Defendants' Motion to Dismiss insofar as it alleges a claim that

---

2001); *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 16 (1st Cir.1998) (favoring practical, commonsense approach instead of one elevating form over substance); *Goodman*, 135 F.Supp.2d at 46–47. Indeed, at oral arguments, the parties agreed that the Court may consider the Student Code in ruling on the Motion to Dismiss.

4. At oral argument, noting that the Complaint failed to allege selective enforcement, Plaintiffs' counsel indicated he might move to amend the Complaint. Be that as it may, the Court must address what the Plaintiffs have pleaded, not what they might plead. Even a generous view of the current allegations in the Complaint does not reveal an allegation of selective enforcement.

the University was without territorial jurisdiction over their conduct because it occurred off-campus.

## B. Conduct of the Hearing.

The next issue is whether the Plaintiffs' allegations that the University violated their procedural due process rights in its conduct of the hearing are sufficient to survive Defendants' Motion to Dismiss. The Plaintiffs are entitled to the protections of due process, since they were facing expulsion or suspension from a public educational institution and their interest in pursuing an education is included within the Fourteenth Amendment's protection of liberty and property. *Gorman*, 837 F.2d at 12 ("[A] student facing expulsion or suspension from a public educational institution is entitled to the protections of due process").

■ This statement is "only the beginning of the inquiry," since due process is "not a fixed or rigid concept, but, rather, is a flexible standard which varies depending upon the nature of the interest affected, and the circumstances of the deprivation." *Gorman*, 837 F.2d at 12. At a minimum, students facing disciplinary action, such as a suspension, must be given "some kind of notice and afforded some kind of hearing." *Goss v. Lopez*, 419 U.S. at 574–75, 95 S.Ct. 729. Judge Gignoux of this Court adopted Professor Wright's description of the minimum requirements of due process in an academic setting:

> (1) the student must be advised of the charges against him; (2) he must be informed of the nature of the evidence against him; (3) he must be given an opportunity to be heard in his own defense; and, (4) he must not be punished

except on the basis of substantial evidence.

*Keene v. Rodgers*, 316 F.Supp. 217, 221 (D.Me.1970) (quoting Wright, *The Constitution on the Campus*, 22 Vand. L.Rev. 1027, 1071–72 (1969)). To these factors, *Keene* added the additional requirements that the student must be permitted the assistance of a lawyer, at least in major disciplinary proceedings; permitted to confront and to cross-examine the witnesses against him; and afforded the right to an impartial tribunal, which shall make written findings. *Id.* at 221 (citations omitted); *see Carey, et al. v. M.S.A.D. No. 17, et al.*, 754 F.Supp. 906, 919 (D.Me. 1990).

The Defendants point to the following specific assertions in the Complaint that allegedly fail to state a claim: (1) the Defendants failed to provide the Plaintiffs with discovery of documents and witnesses; (2) the Defendants placed a physical partition between the Plaintiffs and the alleged victim; and (3) Defendant Fiacco asked them if they would waive their due process rights.[5]

■ Regarding discovery, the Plaintiffs claim they were not provided with a summary of a statement the victim gave to the Old Town police; they were not provided with a third-party statement that directly related to the alleged victim's credibility, though counsel for the alleged victim was provided the statement; and they were not provided with a witness or exhibit list before the day of the hearing.

The Defendants are correct that due process in the context of academic discipline does not necessarily require students be given a list of witnesses and exhibits prior to the hearing, provided that the

---

5. The Court notes the Plaintiffs' claims of procedural deficiency are substantially broader than these specific instances and, on that basis alone, the Plaintiffs' claim of a violation of procedural due process would not be subject to wholesale dismissal.

students are allowed to attend the hearing itself. *Nash v. Auburn Univ.*, 812 F.2d 655, 662–63 (11th Cir.1987) ("[W]e did not require in *Dixon* that students facing a hearing on charges of misconduct be given the names of witnesses against them and a summary of their expected testimony, when the opposing witnesses will testify in the presence of the accused"). The failure to provide potentially exculpatory evidence fits in the same category. "Discoverable evidence" and "witness lists" have the distinct ring of the Federal Rules of Civil Procedure and courts have warned against requiring a university to act as a judicial body. *See Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150, 159 (5th Cir.), *cert. denied*, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961) ("This is not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses, is required"); *Gorman*, 837 F.2d at 16 ("[T]he courts ought not to extol form over substance, and impose on educational institutions all the procedural requirements of a common law criminal trial").

On the other hand, whether the hearing was fair "depends upon the nature of the interest affected and all of the circumstances of the particular case." *Gorman*, 837 F.2d at 13. The University's charge of misconduct, based on an allegation of sexual assault against a fellow student, had serious repercussions for the Plaintiffs. At this stage, it is unclear who was called to testify, other than the alleged victim; what testimony was given; the significance of such testimony; and whether the Plaintiffs should have anticipated the evidence. Reviewing the allegations in a light most favorable to the Plaintiffs at this stage in the proceeding, the Court denies the motion to dismiss on the failure to supply

evidence and the names of witnesses before the day of the hearing.

 In their Complaint, the Plaintiffs have alleged that "during the hearing, the Defendants placed a physical partition between the Plaintiffs and the alleged victim so that neither the Plaintiffs nor their attorney could observe the conduct, demeanor, or testimony of witnesses and others." *Complaint* at 5. The Defendants have cited *Cloud v. Trustees of Boston University*, 720 F.2d 721 (1st Cir.1983), for the proposition that "a physical partition placed between Plaintiffs and the victim do not state a claim." *Def.'s Mem.* at 10. If the allegation were only that the alleged victim was separated from the Plaintiffs by a screen, *Cloud* would control and the Complaint would not state a claim on this issue.

However, in *Cloud*, the First Circuit noted, "Cloud was given the opportunity to cross-examine the witness, and his attorney and the Judicial Committee were permitted to view the witness." 720 F.2d at 725. Here, the Plaintiffs have alleged that their attorney was prohibited from observing the alleged victim and "witnesses and others." It is difficult to envision what is being alleged. The Plaintiffs seem to be claiming not that the partition separated the alleged victim from them, but that the partition separated them *and their attorneys* from the rest of the hearing room.[6] Under *Cloud*, it is possible that erecting a screen walling-off the Plaintiffs and their attorney from the rest of the hearing room might withstand constitutional challenge. But the image of the Plaintiffs' attorney attempting to conduct an effective cross-examination while sitting in a small, screened-in area with his clients, unable to see the witness and the hearing officers,

---

**6.** At oral argument, Plaintiffs' counsel reiterated this claim, a contention Defendants' counsel immediately and vigorously disputed.

However, the Court at this stage in the proceedings cannot resolve a factual dispute.

all the while throwing his voice over the screen, makes this Court reluctant to dismiss this part of the Plaintiffs' claim without some factual development to measure their claim against applicable law.[7] *See, e.g., Keene,* 316 F.Supp. at 221 ("[T]he student must be permitted to confront and to cross-examine the witnesses against him").

Regarding Count II's assertions of procedural due process violations, his Court grants the Motion to Dismiss insofar as the Complaint alleges a territorial limitation to University jurisdiction; it denies the motion to dismiss the procedural due process claims on the conduct of the hearing.

## C. Count III: Breach of Contract.

 In Count III, the Plaintiffs allege the University has "a contract with each of its students" and that "[b]y engaging in the disciplinary proceeding at issue in this case, and by conducting it in a manner that contravened the Student Conduct Code and deprived the Plaintiffs of their federal and state constitutional rights," the University breached the contract. *Complaint* at 35. The Defendants move to dismiss Count III on the ground that it fails to state a claim against the System Trustees and that, other than generally alleging a breach of contract, the Plaintiffs have failed to specify the terms of the contract or how the contract was breached.

The Defendants do not dispute that a contract exists between the University and its students, a point of law well-settled in the First Circuit and Maine. *E.g., Mangla v. Brown Univ.,* 135 F.3d 80, 83 (1st. Cir. 1998) ("The student-college relationship is essentially contractual in nature"); *Goodman v. President and Trustees of Bowdoin Coll.,* 135 F.Supp.2d 40, 55 (D.Me.) ("[B]y pleading his status as a student at Bowdoin College at the time of the incident ... Plaintiff has adequately pleaded the existence of a contractual relationship between Bowdoin and himself"); *Tobin v. Univ. of Me. Sys.,* 59 F.Supp.2d 87, 95 (D.Me.1999) ("Defendants acknowledge that contracts may be formed between students and universities"). Instead, the Defendants focus on the lack of specificity in the allegations of the Complaint.

Regarding Defendants' claim that the Trustees should be dismissed since there was no allegation directly against them, the Student Code expressly states that it was "accepted by the Board of Trustees" and that amendments to it require action by the Board of Trustees. *Pl.'s Reply Mem.* at Ex. A. The imprimatur of the Board of Trustees is sufficiently implicated to withstand a motion to dismiss.

The Student Code states that the University's administrative procedures will afford "fundamental fairness." *Id.* ("[T]he University's administrative process affords fundamental fairness...."); *see Goodman,* 135 F.Supp.2d at 57 ("Bowdoin College acknowledges its responsibility to conduct judicial proceedings which reflect fundamental fairness"). In their Complaint, the Plaintiffs have raised numerous questions as to whether the University's proceedings

---

7. In their Complaint, the Plaintiffs have alleged that Defendant Fiacco, the Judicial Officer of the Student Conduct Code Committee, "asked the Plaintiffs during the hearing if they would waive their right to due process during the hearing." *Complaint* at 5. Defendants have moved to dismiss this allegation on the ground that it fails to state a claim upon which relief can be granted. In their response, the Plaintiffs have clarified that they are not claiming the question itself constituted a violation of their due process rights; instead, the allegation serves to underpin their argument that the Defendants were aware of the Plaintiffs' rights to due process during the hearing. *Pl.'s Reply Mem.* at 8. Thus clarified, it is a factual allegation, not subject to a motion to dismiss.

complied with its contractual promise of fundamental fairness. As in *Goodman*, this Court declines to dismiss these claims for failure to state a claim. 135 F.Supp.2d at 51.

### D. Count IV: Breach of Duty of Good Faith and Fair Dealing.

■ In Count IV, the Plaintiffs allege that Student Code creates a contractual duty of good faith and fair dealing, which the Defendants breached. The Defendants move to dismiss this Count on the ground that Maine law does not recognize an implied duty of good faith and fair dealing. *Caldwell v. Federal Express Corp.*, 908 F.Supp. 29, 36 (D.Me.1995); *Renaissance Yacht Co. v. Stenbeck*, 818 F.Supp. 407, 412 (D.Me.1993); *People's Heritage Sav. Bank v. Recoll Mgmt., Inc.*, 814 F.Supp. 159, 168–69 (D.Me.1993). The Plaintiffs respond that they are not claiming an implied duty of good faith and fair dealing; instead, they are claiming the language of the Student Code imposes a separate contractual obligation.

Both parties are correct. To the extent Count IV states a claim for a breach of an implied duty of fairness and fair dealing, the Plaintiffs do not state a claim cognizable under Maine law. To the extent Count IV states a claim for a breach of an express duty of fairness and fair dealing, the claim is subsumed under Count III. For these reasons, the Court dismisses Count IV.

### E. Counts V, VI, VIII and IX: Maine Tort Claims Act Immunity.

Defendants seek dismissal of Counts V, VI, VIII, and IX on the ground they "sound in tort" and the Defendants are immune under the provisions of the Maine Tort Claims Act. *Def.'s Mem.* at 13. Count V of the Complaint alleges Defendants University of Maine System, its Trustees, and individual Defendants Hoff and Dana engaged in negligent hiring and supervision; Count VI alleges negligence against all defendants; Count VII alleges defamation against all defendants; Count VIII alleges negligent and/or intentional infliction of emotional distress against all defendants; and, Count IX alleges negligent misrepresentation against the University, its Trustees, and individual Defendants Fiacco and Dana.

#### 1. University of Maine Systems: Liability Insurance Coverage.

■ Defendant University of Maine System moves to dismiss the Plaintiffs' tort claims on the ground it is immune from suit under the Maine Tort Claims Act, 14 M.R.S.A. § 8104–B. Plaintiffs note, however, an exemption to this immunity under 14 M.R.S.A. § 8116, which provides that if a governmental entity maintains insurance, it "shall be liable in those substantive areas but only to the limits of the insurance coverage." As qualified immunity is an affirmative defense and as there is no evidence of an absence of coverage, the Plaintiffs properly argue that the Complaint as against the University is not subject to a Rule 12(b)(6) dismissal. *See Napier v. Town of Windham*, 187 F.3d 177, 190 (1st Cir.1999); *King v. Town of Monmouth*, 1997 ME 151, 697 A.2d 837, 840 (Me.1997). The Motion to Dismiss Counts V, VI, VIII and IX as against the University of Maine System is denied.

#### 2. Individual Defendants: Liability Insurance Coverage.

■ Defendant next moves to dismiss the individual defendants on the ground that they are immune from suit. Plaintiffs again point to 14 M.R.S.A. § 8116. Both parties rely upon different decisions of the Maine Supreme Judicial Court as authority for different propositions. The Defen-

dants cite *Moore v. City of Lewiston* for its conclusion § 8116 did not waive city employees' personal immunity even if the city purchased liability insurance for them

> Section 8116 provides that a governmental entity 'may purchase insurance ... on behalf of its employees to insure them against any personal liability for which a government entity is obligated to provide defense or indemnity under § 8112.' However, unlike the parallel provision in § 8116 regarding government entities, which states that 'the *governmental entity* shall be liable ... to the limits of the insurance coverage' (emphasis added), this provision does not purport to waive the personal immunity of insured employees. Thus, regardless of whether the City's insurance coverage extended to the defense or indemnity of the police officers, their personal immunity from liability could not have been waived.

596 A.2d 612, 615–16 (Me.1991); *see Napier,* 187 F.3d at 190.

The Plaintiffs respond with the Law Court's analysis in *Rippett v. Bemis:*

> Because McAlevey is exposed to liability for defamation committed during the course of his work for the York County Sheriffs Department, Sheriff Bemis potentially is liable vicariously as McAlevey's "master" under the doctrine of *respondeat superior.* The Maine Tort Claims Act in general provides immunity from liability for government officials acting in their discretionary function of properly supervising employees who are performing discretionary functions. A government official, however, waives

such Maine Tort Claims Act immunity to the extent he enjoys the protection of liability insurance for his discretionary functions. The York County Sheriffs Department carried comprehensive law enforcement liability insurance during the time the Sheriff supervised Detective McAlevey's investigation and when McAlevey made the statements concerning Loa Rippett. Sheriff Bemis thus waives his immunity from vicarious liability for his supervisory functions to the extent of the policy's coverage. To the extent of that insurance the Maine Tort Claims Act does not shield the Sheriff from vicarious liability under the doctrine of *respondeat superior* for a tortuous act committed by Detective McAlevey within the scope of his employment under the Sheriff's supervision.

672 A.2d 82, 88–89 (Me.1996).

This Court acknowledges, as Judge Hornby did in *Napier,* there is "some ambiguity" between *Moore* and *Rippett. Napier,* 187 F.3d at 191. Nevertheless, for the reasons set for in *Napier,* this Court concurs with Judge Hornby's analysis that § 8116 applied only to the Sheriff's Department, not the sheriff's employee immunity.[8] Further, the Law Court decided *Grossman v. Richards,* 722 A.2d 371 (Me. 1999), after both *Moore* and *Rippett,* and in *Grossman,* the Law Court cited *Moore* and unequivocally reiterated its holding: "Section 8116 only affects the liability of governmental entities, and does not waive the immunity of the individual insured employees." 722 A.2d at 376. This Court concludes that the existence or absence of

---

**8.** The First Circuit expressed no opinion on Judge Hornby's reading of *Rippett* and, therefore, its discussion in *Napier* is not binding on this Court. Nevertheless, the *Napier* Court recited the reasons for Judge Hornby's view: (1) the statutory language is clear in that the waiver applies to a "governmental entity"; (2) the *Moore* Court was explicit in stating that the waiver does not apply to employees; (3) *Rippett* does not overrule or even mention *Moore;* and (4) the Sheriff's Department in *Rippett* was in fact a governmental entity as to which insurance coverage would waive immunity. *Napier,* 187 F.3d at 191.

University-purchased liability insurance for the individual named Defendants does not constitute waiver of their immunity under the Maine Tort Claims Act.

### 3. Specific Tort Claims.

In their Motion to Dismiss, Defendants assert two of the tort counts are subject to dismissal on separate theories. Specifically, they claim that Maine has not adopted the torts of negligent hiring or negligent supervision, which form the bases of Count V, and that the Plaintiffs have not stated a claim for negligent misrepresentation in Count IX upon which relief can be granted.

### a. Count V: Negligent Hiring and Negligent Supervision.

■ The Defendants correctly note that Maine has not recognized the independent tort of negligent supervision of an employee. *E.g., Santoni v. Potter*, 222 F.Supp.2d 14, 28 (D.Me.2002); *Mahar v. StoneWood Trans.*, 823 A.2d 540 (Me. 2003); *Napieralski v. Unity Church of Greater Portland*, 802 A.2d 391 (Me.2002); *Hinkley v. Penobscot Valley Hosp.*, 794 A.2d 643, 647 (Me.2002); *Swanson v. Roman Catholic Bishop of Portland*, 692 A.2d 441, 443–44 (Me.1997). It is true that the Law Court has avoided holding that the tort does or does not exist. *E.g., Mahar*, 823 A.2d at 543 ("Even if we were to adopt negligent supervision as an independent tort ... the facts of this case do not support such a cause of action"); *Napieralski*, 802 A.2d at 393 ("Even if we were disposed to recognize a cause of action for negligent supervision, it would be problematic at best to undertake recognition of that tort in this case"); *Hinkley*, 794 A.2d at 647 ("Although we have never before recognized the independent tort of negligent supervision, Hinkley urges us to do so now.... [W]e need not address that

issue"). The best the Plaintiffs can say is the Law Court has implied it will rule on whether the tort exists if the proper set of facts comes before it.

In addressing the same question, Magistrate Judge Cohen expressed a view with which this Court agrees: "The Maine Law Court has never recognized the tort of negligent supervision. (citations omitted). The Court is loathe to recognize a new state tort in advance of the state's highest court...." *Santoni*, 222 F.Supp.2d at 28; *see also Forum Fin. Group v. Pres. and Fellows of Harvard Coll.*, 2002 WL 31175454 at **1, 16 (D.Me.2002). Because Maine has not recognized the tort of negligent supervision of an employee, this Court grants the Defendants' Motion to Dismiss on this cause of action.

■ The tort of negligent hiring, although similar to negligent supervision, is a separate tort. Unlike negligent supervision, the Maine Supreme Judicial Court has recognized the tort of negligent hiring; however, it has limited its application to a narrow context: negligent selection of a contractor. In *Dexter v. Town of Norway*, 715 A.2d 169, 172 (Me.1998), the Law Court adopted as the law of Maine Restatement (Second) of Torts § 411, which provides:

> An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons.

In doing so, however, the Law Court circumscribed its holding, stating that "[w]e are far less certain whether and under what circumstances we would recognize the doctrine variously described as involving 'a peculiar unreasonable risk' (§ 413),

'a peculiar risk' (§ 416) or 'a special risk' (§ 427)." 715 A.2d at 172.

Restatement (Second) of Torts § 411 does not provide a basis for the tort of negligent hiring of an employee; instead, Restatement (Second) of Torts § 307 [9] and Restatement (Second) of Agency § 213(b) [10] provide authority for jurisdictions that have adopted the tort. *See, e.g., Quinonez v. Andersen,* 144 Ariz. 193, 696 P.2d 1342 (1984). The Law Court's limited adoption of the tort of negligent selection of a contractor under Restatement (Second) of Torts § 411 does not, in this Court's view, extend to the wholesale adoption of the tort of negligent hiring, especially in view of the Law Court's cautious approach to the tort of negligent supervision.[11] *But see Brennan v. Stone Coast Brewing Co.,* CV–01–555, 2003 WL 1618509 (Me.Super. Jan. 21, 2003) (Crowley, J.) (stating, "negligent hiring ... has been recognized by the Law Court," and citing *Dexter v. Town of Norway* ). Magistrate Judge Cohen's reluctance "to recognize a new state tort in advance of the state's highest court" applies with equal force to the unrecognized tort of negligent hiring. *Santoni,* 222 F.Supp.2d at 28.

Count V is dismissed for failure to state a claim under Maine tort law upon which relief can be granted.

**b. Count IX: Negligent Misrepresentation.**

Count IX, alleging negligent misrepresentation, presents a different issue. The Defendants do not contend that Count IX fails to state a claim under Maine tort law; rather, they contend that the Plaintiffs' allegations are insufficient to state a claim under the Maine Tort Claims Act. Unlike the other counts, Count IX alleges the Defendants were "acting in the course of their employment" in supplying "false information for the guidance of the Plaintiffs in their transactions as students and student athletes." *Complaint* at 47. The question, then, is whether this distinct allegation makes a legal difference.

Since it sounds in negligence, Count IX does not allege intentional harm under *MacKerron v. Madura,* 474 A.2d 166, 167 (Me.1984) (discussed below); however, the remaining allegations of Count IX do not further illuminate the factual grounds for the cause of action. At this stage, the Court cannot assume the factual underpinnings of Count IX would not sustain a ministerial function claim or a claim that the actions, though within the course of employment, fell outside the employees' legal authorization. Accordingly, the Motion to Dismiss Count IX must be denied.

9. Restatement (Second) of Torts § 307 provides:

It is negligence to use an instrumentality, whether a human being or a thing, which the actor knows or should know to be so incompetent, inappropriate or defective, that its use involves an unreasonable risk of harm to others.

10. Restatement (Second) of Agency § 213(b) provides:

A person conducting an activity through servants...is subject to liability for harm resulting from his conduct if he is negligent or reckless: (b) in the employment of improper persons...in work involving risk of harm to others....

Comment (d) to § 213 gives an example of a principal who, without exercising due care in selection, employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty, and is liable for harm caused by the vicious propensity.

11. At oral argument, Plaintiffs' counsel made the valid point that the torts of negligent hiring and negligent supervision seem virtually indistinguishable. The Court agrees. It would seem at least inconsistent for Maine to impose civil liability on an employer for negligent hiring of an employee, but no liability for the same employer's negligent supervision of the same employee.

### 4. Discretionary Immunity: All Tort Claims.

The University next contends all remaining tort allegations in the Complaint against the individual Defendants are subject to dismissal because they run afoul of 14 M.R.S.A. § 8104–B(3), which provides immunity for "performing or failing to perform any discretionary function or duty." This immunity insulates from personal liability a government employee who has been legislatively authorized to perform a discretionary function and has acted or failed to act pursuant to that authorization. *Darling v. Augusta Mental Health Inst.,* 535 A.2d 421, 425 (Me.1987); *True v. Ladner,* 513 A.2d 257, 260 (Me. 1986). The Maine Supreme Judicial Court has held that discretionary function immunity does not apply to intentional harm, *MacKerron,* 474 A.2d at 167; functions that are ministerial, not discretionary, *Kane v. Anderson,* 509 A.2d 656, 656–57 (Me.1986), or conduct outside the scope of the actor's legal authorization, *True,* 513 A.2d at 260 ("[A]n employee of a governmental entity enjoys a personal immunity from civil liability for his performance of, or failure to perform, a discretionary function or duty only when a 'statute, charter, ordinance, order, resolution, regulation or resolve' authorizes the performance of the discretionary function or duty and when the defendant has acted, or has failed to act, pursuant to that authorization").

In *Darling,* the Law Court established a four-prong test to determine governmental immunity: (1) whether the act necessarily involves a basic governmental policy, program or objective; (2) whether the act is essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective; (3) whether the act requires the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental entity involved; and (4) whether the government possesses the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act. 535 A.2d at 426.

The Plaintiffs claim the actions of the individual Defendants exceeded the "scope of any discretion" they could have possessed in their official capacity. *See Lyons v. City of Lewiston,* 666 A.2d 95, 101 (Me.1995). They assert the individual Defendants exceeded their discretion in the manner in which they conducted the disciplinary process and in the hiring and supervision of Defendant Fiacco.[12]

The factual allegations in the Complaint have the distinct ring of the exercise of discretion. The nature and scope of a University disciplinary hearing, the conduct of the hearing itself, and the final judgment of the University officials would appear to fit well within discretionary function immunity under the Maine Tort Claims Act. Absent an allegation of intentional harm, investigating a student disciplinary complaint, conducting a disciplinary hearing, and issuing a decision would seem by the nature of the activity not to be ministerial duties, to require the exercise of discretion, and to be within the scope of the official's legal authorization.

Nevertheless, Courts that have ruled against a Plaintiffs' claim on this basis have almost universally done so in the context of a motion for summary judgment, not a motion to dismiss. *See, e.g.,*

---

12. The Plaintiffs also claim that the actions of the individual Defendants exceeded the scope of their official discretion because the University exceeded its jurisdiction by subjecting the Plaintiffs to discipline for actions that allegedly took place off campus. The Court rejected this contention earlier and will not readdress it at this time.

*Lightfoot v. School Admin. Dist. No. 35,* 816 A.2d 63 (Me.2003); *Carroll v. City of Portland,* 736 A.2d 279 (Me.1999); *Adriance v. Town of Standish,* 687 A.2d 238 (Me.1996); *Erskine v. Commissioner of Corr.,* 682 A.2d 681 (Me.1996); *Preti, Flaherty, Beliveau & Pachios v. Ayotte,* 606 A.2d 780 (Me.1992); *Polley v. Atwell,* 581 A.2d 410 (Me.1990); *Mueller v. Penobscot Valley Hospital,* 538 A.2d 294 (Me. 1988). To sustain a motion to dismiss, the defendant must demonstrate that there is no set of facts which would entitle the plaintiff to relief. *Gooley,* 851 F.2d at 514. Based on the high standard for dismissal, the Court denies the Defendants' Motion to Dismiss Counts VI, VII, and VIII of the Complaint.

In sum, regarding the Maine Tort Claims Act allegations, the Court grants Defendants' Motion to Dismiss Count V and denies Defendants' Motion to Dismiss Counts VI, VII, VIII, and Count IX of the Complaint.

### F. Count X: Punitive Damages.

In Count X, the Plaintiffs allege that the Defendants' conduct was "so outrageous that malice toward the Plaintiffs can be implied." The University moves to dismiss this Count on the assumption that the entire Complaint, except for the punitive damages count, has been dismissed. It has not. The law allows for the imposition of punitive damages with significant limitations. *E.g., Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) ("[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *DiMarco–Zappa v. Cabanillas,* 238 F.3d 25, 37–38 (1st Cir.2001); *Rippett,* 672 A.2d at 89 (Me.1996) ("The Maine Tort

Claims Act provides no general protection from punitive damages for an employee held personally liable"). The Court declines to dismiss the punitive damages count at this stage in the proceedings.

### IV. Conclusion

For the reasons set forth above, this Court GRANTS the Defendants' Motion to Dismiss Counts I, IV and V. Further, this Court GRANTS the Defendants' Motion to Dismiss Count II in part, but only insofar as it claims any violation of substantive or procedural due process related to a territorial limitation of University jurisdiction. On all other Counts, this Court DENIES Defendants' Motion to Dismiss.

SO ORDERED.