# United States Court of Appeals
## For the First Circuit

No. 03-1914

VINCENT JAMES SANTONI, JR.,

Plaintiff, Appellant,

v.

JOHN E. POTTER, POSTMASTER GENERAL AND CEO, UNITED STATES POSTAL
SERVICE ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Chief Judge,
Lynch, and Lipez, Circuit Judges.

Cynthia Dill for the appellant.
    Evan J. Roth, Assistant United States Attorney, with whom
Paula D. Silsby, United States Attorney, was on brief for appellees
John Potter, United States Postmaster General, and Michael
Desrosiers. Peter T. Marchesi, with whom Wheeler & Arey, P.A. was
on the brief for appellees Barry DeLong and Randy Wing.

May 27, 2004

**LIPEZ, Circuit Judge**.  Vincent Santoni appeals from the district court's grant of summary judgment in favor of the defendants on his claims against Michael Desrosiers and John E. Potter, Postmaster General and CEO of the United States Postal Service (USPS).[1]  Santoni, a former postmaster of Solon, Maine, was arrested for indecent exposure by a local deputy sheriff.  Desrosiers, a postal inspector who had sworn out the arrest warrant, accompanied the deputy sheriff and participated in the arrest.  Santoni subsequently filed an 18-count complaint against Desrosiers, the USPS, and the sheriff and deputy sheriff of Somerset County, Maine, asserting a variety of federal constitutional and state law claims in connection with the allegedly unlawful arrest.  The district court granted summary judgment in favor of the defendants on all counts.  Santoni appeals from the district court's grant of summary judgment in favor of the federal defendants[2] on his Fourth Amendment claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and his claims of unlawful arrest, assault, battery, and false imprisonment under the Federal Tort Claims Act (FTCA), 28

---

[1]Both parties treat the claims against named defendant John E. Potter as claims against the USPS.  For simplicity, we refer to this party throughout this opinion as the USPS.

[2]Santoni filed this appeal against all of the original parties but expressly abandoned his claims against the state defendants in his brief to this court.

U.S.C. §§ 1346(b), 2671-2680. We affirm the decision of the district court.

## I.

On August 2, 1999, Michael Desrosiers, a postal inspector for the United States Postal Service, learned that the USPS had received a complaint concerning Vincent Santoni, the postmaster of Solon, Maine. The complaint alleged that Santoni had exposed himself to Heather M., a 15-year-old girl who resided in Solon. On August 13, 1999, Desrosiers' supervisor instructed him to conduct an immediate investigation.

On August 16, 1999, Desrosiers interviewed Heather, who said that around 2 p.m. on July 15, 1999, she was riding her bicycle across a bridge near the post office in Solon when she heard someone call her name. She turned around and recognized Santoni, whom she knew, standing by the edge of the water with his pants down to his knees and both of his hands holding his exposed penis. Heather told Desrosiers that for several years Santoni had been making inappropriate sexual comments and gestures to her during her visits to the Solon post office. Heather's mother, who attended the interview, said that Santoni had also made inappropriate comments to her and to other women. Desrosiers prepared a type-written statement based on the interview, which Heather reviewed and signed. Over the next few weeks, Desrosiers interviewed other female customers of the Solon post office who

reported that Santoni had touched them or made inappropriate comments while he was at work at the post office.

On September 8, 1999, Desrosiers discussed the results of his investigation with Andrew Benson, an Assistant District Attorney (ADA) for Somerset County, Maine. At Benson's request, Desrosiers arranged for a fellow postal inspector, who was also a polygraph examiner, to administer a polygraph examination of Heather. After receiving the results of the test, which Heather passed, Desrosiers again discussed the case with ADA Benson. At the conclusion of that discussion, the DA's Office authorized the prosecution of Santoni on the criminal charge of indecent conduct, a Class E misdemeanor under 17A Me. Rev. Stat. Ann. § 854.

On October 5, 1999, Desrosiers appeared before the clerk of the state district court in Skowhegan, Maine, to present a request for a criminal complaint and a warrant for Santoni's arrest. He also submitted a supporting affidavit identifying Desrosiers as a postal inspector and stating that he had probable cause to believe that Santoni had committed the state law offense of indecent conduct, in violation of 17A Me. Rev. Stat. Ann. § 854. The affidavit provided details about Desrosiers' interview with Heather and stated that she had passed a polygraph examination. The court clerk issued a criminal complaint against Santoni for violating the indecent conduct statute and a corresponding warrant for his arrest. At Desrosiers' request, Randy Wing, a deputy

sheriff for Somerset County, accompanied Desrosiers to Santoni's home, where Santoni was arrested. On April 21, 2000, Santoni was tried in the Skowhegan District Court and was acquitted after the court determined that the evidence was insufficient to sustain a conviction for indecent conduct.[3]

On January 3, 2002, Santoni filed an 18-count complaint in the United States District Court for the District of Maine against the USPS, Desrosiers, Wing, and Somerset County Sheriff Barry DeLong. He sued the USPS pursuant to the FTCA, 18 U.S.C. §§ 1346, 2671 et seq., claiming that it was liable to him for unlawful arrest, abuse of process, malicious prosecution, false imprisonment, intentional and/or negligent infliction of emotional distress, assault, battery, invasion of privacy, and negligent supervision and training. He sued Desrosiers in his individual capacity, seeking damages for violations of the First, Fourth, and Fifth Amendments of the United States Constitution pursuant to Bivens, 403 U.S. at 388. Santoni brought analogous Fourth Amendment claims against Wing and DeLong pursuant to 42 U.S.C. § 1983. He further claimed that all four defendants had engaged in a civil conspiracy to violate his federal and state civil rights.

_____

[3]Heather had stated in her sworn statement and in a pre-trial interview with ADA Mitchell that she had viewed Santoni's genitals on July 15. However, during cross examination, she acknowledged that she had not been able to see Santoni's penis because of the placement of his hands around it. The district court found that Heather's testimony failed to satisfy 17A Me. Rev. Stat. Ann. § 854, which prohibits a person from knowingly exposing his or her genitals.

On April 8, 2002, Desrosiers and the USPS, the federal defendants, moved to dismiss or for summary judgment on all of Santoni's federal claims. The district court determined that no constitutional rights had been violated and that, in any event, Desrosiers was protected from liability on Santoni's Fourth Amendment claim by the doctrine of qualified immunity. Although it found that Santoni's FTCA claims against the USPS did not fall within the FTCA's discretionary function exception, it held that the claims failed on their merits. Therefore, the district court granted summary judgment in favor of Desrosiers and the USPS and dismissed Santoni's claims against them. After the district court granted summary judgment for the federal defendants, the lawsuit proceeded against DeLong and Wing. Following discovery, the state defendants filed a motion for summary judgment, which was granted. Santoni filed this appeal against all of the original defendants but has chosen not to prosecute his claims against the state defendants.

## II.

On appeal, Santoni challenges the district court's grant of summary judgment in favor of Desrosiers on Santoni's Bivens claim. He argues that because Desrosiers lacked authority under state or federal law to make an arrest for a Class E state law crime, the arrest of Santoni constituted an unreasonable seizure in violation of the Fourth Amendment. He further claims that

Desrosiers is not entitled to qualified immunity. In addition, Santoni argues that because the district court improperly determined that the arrest was lawful, it erred in granting summary judgment in favor of the USPS on Santoni's FTCA claims. We address each of these arguments in turn.

## A.    Standard of Review

We review the district court's grant of summary judgment de novo. Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 98 (1st Cir. 2002). Summary judgment is appropriate where the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit" under the applicable legal standard. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual issue is "genuine" only "if a reasonable jury could resolve it in favor of either party." Basic Controlex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000). In deciding whether a genuine issue of material fact exists, we construe the evidence in the light most favorable to the non-moving party. Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004).

## B.    Bivens Claim Against Desrosiers

### 1.    Santoni's Arrest

Under Bivens, a person may sue a federal official in his or her individual capacity for damages arising out of a constitutional

violation committed under color of federal law.  See Bivens, 403 U.S. at 389; Aversa v. United States 99 F.3d 1200, 1213 (1st Cir. 1999).  Relying on Bivens, Santoni claims that because Desrosiers had no legal authority to make an arrest for a state law misdemeanor, his arrest of Santoni constituted an unreasonable seizure in violation of the Fourth Amendment.[4]

We have not resolved whether an arresting officer's lack of authority under state or federal law to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment.  The circuits are divided on this issue.  Compare Malone v. County of Suffolk, 968 F.2d 1480, 1482-83 (2d Cir. 1992) (whether officers have valid authority to arrest pursuant to state law affects constitutionality of the arrest); Ross v. Neff, 905 F.2d 1349, 1353-54 (10th Cir. 1990) (arrest executed outside of the officer's jurisdiction violates the Fourth Amendment and gives rise to a potential § 1983 action); and United States v. Trigg, 878 F.2d 1037, 1041 (7th Cir. 1989) (custodial arrest is constitutional if arresting officer had probable cause and authority under state or municipal law to effect a custodial arrest for the particular offense) with United States v. Bell, 54 F.3d 502, 504 (8th Cir. 1995); ("[W]e do not think Fourth Amendment analysis requires reference to an arrest's legality under state

---

[4]The Fourth Amendment provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue but upon probable cause . . . ." U.S. Const. Amdt. 4.

-8-

law."); <u>Fields</u> v. <u>City of South Houston</u>, 922 F.2d 1183, 1189 (5th Cir. 1991) (holding that there is no § 1983 cause of action for false arrest unless the arresting officer lacked probable cause); <u>and</u> <u>Street</u> v. <u>Surdyka</u>, 492 F.2d 368, 372-73 (4th Cir. 1974) (same). We do not reach this constitutional question[5] because we conclude that Desrosiers was authorized to swear out the criminal complaint and receive the complaint and warrant for Santoni's arrest, and that the warrant was executed under the lawful authority of Deputy Sheriff Wing.

Under federal law, the United States Postal Service has authority "to investigate postal offenses and civil matters relating to the Postal Service." 39 U.S.C. § 404(a)(7). This authority is primarily exercised through the Postal Inspection Service, which is charged with "[e]nforcing laws related to the Postal Service, the mails, other postal offenses and other laws of the United States." 39 C.F.R. § 224.3(b)(2).

The federal arrest powers of postal inspectors, however, are limited and specifically defined, including the authority to "serve warrants and subpoenas issued under the authority of the United States" and to make certain warrantless arrests "for offenses

---

[5]"[P]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." <u>Gulf Oil Co.</u> v. <u>Bernard</u>, 452 U.S. 89, 99 (1981); <u>see also</u> <u>United States</u> v. <u>Maldonado</u>, 356 F.3d 130, 137 (1st Cir. 2004) (avoiding a constitutional question about the relevance of subjective intent to Fourth Amendment analysis of an administrative search where the appellant's subjective intent argument "fail[ed] on its facts").

against the United States." 18 U.S.C. § 3061(a); see also 39 C.F.R. § 233.1(a). Postal inspectors are not authorized under federal law to execute a warrant or make an arrest for a state law offense. See United States v. Univerzagt, 424 F.2d 396, 398 n.1 (8th Cir. 1970) ("Postal inspectors under 18 U.S.C.A. § 3061 are given power to make arrests for postal offenses upon probable cause but are given no power to make arrests for state offenses by either state or federal statute."). Similarly, while Maine law permits some specifically designated "federal officers" to make arrests to enforce state law in certain situations, postal inspectors are not among these officers. 25 Me. Rev. Stat. Ann. § 1502-A. Thus, Desrosiers did not have authority under state or federal law to make an arrest for a violation of state law.

Nonetheless, the district court concluded that although Maine law did not confer upon Desrosiers authority to arrest Santoni, it did authorize him to swear out a warrant for Santoni's arrest, either in his capacity as a law enforcement official or as a private citizen acting with the approval of the district attorney's office. It further held that the execution of the warrant was lawful because Desrosiers participated in the arrest as a private citizen and was assisted by Deputy Sheriff Wing, who had an affirmative duty to arrest Santoni. Santoni challenges both of these determinations.

### a. Swearing Out the Criminal Complaint

In accordance with Maine law, a Maine district court clerk may, in the absence or unavailability of a justice of the peace or a prosecuting attorney or any of his assistants, prepare and draft a misdemeanor criminal complaint "upon the request of any law enforcement officer." 15 Me. Rev. Stat. Ann. § 708. While the statute does not define the phrase "law enforcement officer," the district court interpreted it to include postal inspectors. We agree.

When interpreting a statute under Maine law, words and phrases are to be construed in accordance with "the plain meaning of the enactment." 1 Me. Rev. Stat. Ann. § 72. Applying this rule of statutory construction to 15 Me. Rev. Stat. Ann. § 708, we find that "any" law enforcement officer includes every kind of law enforcement officer, regardless of whether or not the officer is statutorily authorized to enforce state law. Moreover, we have regularly recognized postal inspectors as law enforcement officers. See, e.g., United States v. Carrillo Figueroa, 34 F.3d 33, 43 (1st Cir. 2002) (for sentence enhancement purposes, defendant should have known that postal inspector was a "law enforcement officer"); see also Cosme v. Henderson, 287 F.3d 152, 156 (2d Cir. 2002) (Plaintiff "applied for a position as a postal inspector, a highly competitive law enforcement position."); Stout v. Potter, 276 F.3d

1118, 1121 (9th Cir. 2002) (The Postal Inspection Service is "the law enforcement branch of the United States Postal Service.").

Santoni argues that the phrase "law enforcement officers" as used in 15 Me. Rev. Stat. Ann. § 708 does not include postal inspectors because postal inspectors are not among those federal law enforcement officials vested with the "power to enforce state law" under 25 Me. Rev. Stat. Ann. § 1502-A. However, 15 Me. Rev. Stat. Ann. § 708 does not limit authority to swear out a criminal complaint to state law enforcement officers and federal officers who are specifically empowered to enforce state law. Nor does 25 Me. Rev. Stat. Ann. § 1502-A place any limitations on the kinds of officers who may swear out complaints. Therefore, we agree with the district court that the phrase "any law enforcement officer" does not preclude postal officials from swearing out criminal complaints.[6]

---

[6]Because we conclude that Desrosiers was a law enforcement officer for the purposes of 15 Me. Rev. Stat. Ann. § 708, we do not consider the district court's alternative holding that the court clerk properly issued the complaint to Desrosiers in his capacity as a private citizen because the district attorney's office approved the prosecution. See 15 Me. Rev. Stat. Ann. § 708 (providing that in the absence or unavailability of a justice of the peace or prosecuting attorney, a court clerk may issue a complaint to a person who is not a law enforcement officer for a non-felony offense "with the approval of the Attorney General or his designee").

### b.     Executing the Arrest Warrant

Santoni also argues, however, that even if Desrosiers was authorized to swear out and receive the complaint, he had no authority to carry out the arrest of Santoni.  Once an arrest warrant is issued, only an "officer authorized by law" may execute that warrant.  Me. R. Crim. P. 4(c)(1).  As noted, postal inspectors are not among those officers authorized under Maine law to execute arrest warrants.  25 Me. Rev. Stat. Ann. § 1502-A. Santoni argues that Desrosiers also had no authority to execute the arrest in his capacity as a private citizen.  Therefore, he claims that "the district court's conclusion that Desrosiers was authorized as a private person to arrest Santoni was clearly erroneous and should be reversed."

Santoni is correct that Maine law does not authorize private citizens to make an arrest for a Class E crime not committed in their presence.  See 17-A Me. Rev. Stat. Ann. § 16; cf. Unverzagt, 424 F.2d at 398 (postal inspector's arrest of individual for carrying a concealed weapon was valid under Nebraska law that authorized private citizens to make an arrest for a felony committed in their presence).  However, the district court held that Santoni's arrest was lawful, not because Desrosiers had state law authority to execute the warrant, but because Deputy Sheriff Wing participated in the arrest.  In light of Wing's knowing participation in the arrest, the court explained that it "would be

elevating form over substance to conclude that the validity of the arrest depended on which of the two men uttered the words 'You are under arrest,' or placed the Plaintiff in handcuffs."

We agree with the district court's conclusion that Santoni's arrest was lawful because it was carried out under Wing's lawful authority. Under Maine law, an arrest warrant "shall be executed by any officer authorized by law." Me. R. Crim. P. 4(c)(1). Deputy Sheriff Wing was clearly authorized – and indeed, required – by law to arrest Santoni under 15 Me. Rev. Stat. Ann. § 602, which provides that "[i]t is the responsibility of all police and sheriff departments and their officers to use all reasonable efforts to execute the outstanding arrest warrants of which they are aware." See also Kane v. Anderson, 509 A.2d 656, 657 (Me. 1986) (concluding that "the execution of an arrest warrant is a ministerial rather than a discretionary function"); Carroll v. City of Portland, 736 A.2d 279, 283 (Me. 1999) ("[A] ministerial act is mandatory and requires no personal judgment or choice.") (emphasis in original). It is undisputed that Wing accompanied Desrosiers at Desrosiers' request to Santoni's residence where Santoni was arrested and then transported by Wing and Desrosiers to the Somerset County Sheriff's Department. Based on these facts, the district court appropriately concluded that Wing was aware of the outstanding arrest warrant and had a legal duty to execute it. Desrosiers' presence at the arrest, for the purpose of assisting

-14-

Wing in the execution of the warrant, did not render that arrest unlawful under state law or constitutionally infirm. Cf. Wilson v. Layne, 526 U.S. 603, 614 (1999) (holding that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of third parties in the home was not in aid of the execution of the warrant").

For the first time on appeal, Santoni argues that summary judgment was inappropriate because it is reasonable to infer that Wing was not aware of the warrant and therefore had no obligation to execute it. This argument relies on statements made by Wing in a deposition taken on January 31, 2003, five months after the entry of summary judgment in favor of the federal defendants. As Santoni acknowledges, however, this transcript was not available to the district court and therefore is not part of the record on appeal. Moreover, Santoni never argued below that Wing was unaware of the warrant. Indeed, his complaint suggested that Wing knowingly participated in the arrest, with a reference to the "illegal arrest of Santoni by defendants" and the claim that "Defendants DeLong and Wing did not have probable cause to arrest Santoni" (emphasis added). Similarly, in his opposition to the defendants' motion for summary judgment, Santoni alleged that Desrosiers "arrested plaintiff without authority to do so and that the other defendants knew it was unlawful but agreed to participate" (emphasis added).

Because Santoni failed to raise below his theory that Wing had no obligation to arrest Santoni because he did not know about the warrant, this argument is now procedurally defaulted. See Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

In sum, Desrosiers had valid authority to swear out the criminal complaint and receive the complaint and warrant for Santoni's arrest, and Wing had valid authority to execute that warrant. Therefore, we agree with the district court that Santoni's arrest was lawful under Maine law and that it did not constitute an unreasonable seizure under the Fourth Amendment.

## 2. Qualified Immunity

Because Santoni has not presented a viable constitutional claim, we do not consider whether Desrosiers is protected from liability by qualified immunity. See Saucier v. Katz, 533 U.S. 194 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); Flowers v. Fiore, 359 F.3d 24, 34 (1st Cir. 2004) ("Upon finding that there was no constitutional violation, we do not address the issue of qualified immunity.").

## C. __FTCA Claims Against the USPS__

We next consider whether the district court erred in granting summary judgment for the USPS on Santoni's tort claims of unlawful arrest, assault, battery, and false imprisonment.

The Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., provides a limited congressional waiver of the sovereign immunity of the United States for torts committed by federal employees acting within the scope of their employment.  Under the statute, the United States may be held civilly liable "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.  Certain types of intentional torts are exempted from the FTCA's waiver of sovereign immunity, but the statute allows claims against the United States for the torts of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" arising out of "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h).

This waiver of sovereign immunity, however, is subject to a number of statutory exceptions. See 28 U.S.C. § 2680.  One defense raised in the proceedings below was the discretionary function exception, which shields from liability claims "based upon the exercise or performance or the failure to exercise or perform a

-17-

discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If the discretionary function exception applies, the agency is completely immune from suit, and the claim must be dismissed for lack of subject matter jurisdiction. Kelly v. United States, 924 F.2d 355, 360 (1st Cir. 1991).

The district court held that the discretionary function exception did not preclude consideration of Santoni's tort claims against the USPS for alleged harms arising from Desrosiers' participation in the arrest of Santoni. Because Desrosiers acted outside the scope of his federal authority as a postal inspector when he participated in this arrest (regardless of whether his conduct was authorized under state law), the court concluded that the discretionary function exception did not apply.[7] As we recently noted,"courts have read the Supreme Court's discretionary function cases as denying protection to actions that are unauthorized because they are unconstitutional, proscribed by statute, or exceed the scope of an official's authority." Thames Shipyard & Repair Co. v. United States, 350 F.3d 247, 254-55 (1st Cir. 2003) (collecting cases). However, we have not resolved whether the discretionary function exception extends to actions

_____

[7]The USPS does not challenge this determination on appeal; indeed, the attorney for the government conceded at oral argument that the discretionary function exception does not bar consideration of Santoni's claims.

-18-

that are otherwise outside the scope of an official's actual federal authority, and we need not do so here. Nor do we address whether Desrosiers had implied federal authority to participate in the arrest to the limited extent of swearing out the criminal complaint, receiving the arrest warrant, and assisting Wing in the execution of that warrant. See, e.g., id. at 260 (holding that the discretionary function exception applied where the Coast Guard had implied statutory authority to order the evacuation of a sinking ship). Assuming, arguendo, that the USPS is not shielded from liability by the discretionary function analysis, Santoni's tort claims fail on the merits.

As noted, under the FTCA, the USPS is liable for the torts of its agents, "in the same manner and to the same extent of a private individual under like circumstances." 28 U.S.C. § 2674. Because the alleged tortious conduct took place in Maine, we look to Maine tort law in determining the defendant's liability under the FTCA. 28 U.S.C. § 1346(b)(1).

Santoni's claims of false arrest, false imprisonment, assault, and battery rely on the premise that Desrosiers acted at least negligently by arresting Santoni without any lawful authority to do so. Under Maine law, the torts of assault and battery by a law enforcement officer require either a false arrest or the use of excessive force during or after taking an individual into custody. Bale v. Rider, 290 A.2d 359, 360 (Me. 1972). Similarly, in order to establish a tort claim of false arrest and false imprisonment

"the authority upon which [P]laintiff is confined must be unlawful." Nadeau v. State, 395 A.2d 107, 116 (Me. 1978) (stating elements of false imprisonment claim); see Jedzierowski v. Jordan, 172 A.2d 636, 637 (Me. 1961) (holding that false arrest is one means of committing false imprisonment).

As we have already concluded, supra, Santoni was arrested and confined upon valid state law authority. Desrosiers' participation in the arrest did not render it unlawful under state law or the Fourth Amendment. Because Santoni's arrest was lawful, there is no basis for finding liability for false arrest, false imprisonment, assault, or battery. Therefore, we conclude that the district court properly granted summary judgment in favor of the defendants on Santoni's FTCA claims against the USPS.

## III.

For the foregoing reasons, the district court's entry of summary judgment in favor of the defendants is **affirmed**.

**So ordered.**