Bonnie **CHALOULT**, Plaintiff

v.

**INTERSTATE BRANDS CORPORATION,**
**Defendant.**

**Civil No. 06–166–P–S.**

United States District Court,
D. Maine.

Sept. 12, 2007.

Guy D. Loranger, Nichols & Webb, P.A., Saco, ME, for Plaintiff.

Robert W. Kline, Kline Law Offices, Portland, ME, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GEORGE Z. SINGAL, Chief Judge.

Plaintiff Bonnie Chaloult brought the instant action against her former employer Defendant Interstate Brands Corporation ("IBC") alleging hostile work environment sexual harassment in violation of Title VII (Count I), 42 U.S.C. § 2000e *et seq.*, and the Maine Human Rights Act (Count II), 5 M.R.S.A. § 4572 *et seq.* Now before the Court is Defendant's Motion for Summary Judgment, which asserts two bases for disposing of the case prior to trial: (1) no reasonable juror could conclude that the alleged sexual harassment was severe or pervasive, and (2) even if the harassment could be found to be sufficiently severe or pervasive, Defendant is entitled to judgment on its *Faragher–Ellerth* affirmative defense. (Docket # 9.)

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Santoni v. Potter,* 369 F.3d 594, 598 (1st Cir.2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit

under the governing law if the dispute over it is resolved favorably to the non-movant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni*, 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

## II. FACTS

IBC hired Ms. Chaloult on June 11, 1999 as a general production employee. (Depo-sition of Bonnie Chaloult (January 16, 2007) ("Chaloult I") at 4.) On September 4, 2004, Ms. Chaloult was promoted to a bread supervisor. (Chaloult I at 7.) As a supervisor, Ms. Chaloult began reporting to Kevin Francoeur, Assistant Production Manager, in February 2005. (Chaloult I at 8.) Mr. Francoeur was one of three assistant department managers reporting to Paul Santos, Bread Production Manager. (Deposition of Paul Santos at 7, 9–10.) Mr. Francoeur ran the overnight shift. (Santos Dep. at 19.) Ms. Chaloult, Jim Anderson and two others worked as supervisors on the overnight shift who reported to Mr. Francoeur. (Santos Dep. at 19–20.)

Starting in February 2005, Ms. Chaloult alleges that she was subjected to sexually harassing conduct by her supervisor, Mr. Francoeur. The following incidents of sexual harassment are undisputed in the record.

(1) Mr. Francoeur would often speak about the absence of sexual relations with his wife in Ms. Chaloult's presence. (Chaloult I at 35.)

(2) Mr. Francoeur told Ms. Chaloult that he wanted to come over to her house and show her what f——ing was all about. (Chaloult I at 45.)

(3) Mr. Francoeur made comments about Ms. Chaloult's breasts as well as other IBC employees' breasts.[1] For example, Francoeur referred to Ms. Chaloult's breasts as melons and said that they were huge. (Chaloult I at 52–53.) On that same occasion, Mr. Francoeur also referred to Ms. Chaloult's breasts as big hooters. (Chaloult I at 53.) On several other occasions, Mr. Francoeur asked Ms. Chaloult what the distance

---

1. Mr. Francoeur commented on the breasts of other female IBC employees. On one occasion, Mr. Francoeur watched a female worker go by and commented to Mr. Anderson that her breast looked "pretty perky." (Anderson Dep. at 25–26.) On another occasion, Mr. Francoeur looked at some female employees on a break and said to Mr. Anderson, "I wonder if their nipples are hard from being outside." (Anderson Dep. at 27.)

was between her nipples. (Chaloult I at 37.) Mr. Francoeur also told Ms. Chaloult to go home and to measure the distance between her nipples. (Chaloult II at 5.) In fact, Mr. Francoeur asked all of the supervisors to measure their "point spread," referring to the distance between their nipples. (Deposition of Jim Anderson at 32.)

(4) Sometime in May 2005, when Ms. Chaloult was testing some dough for elasticity, Mr. Francoeur said that if the dough ball wasn't enough for her to play with, he had some balls that she could play with. (Chaloult I at 49–50; Chaloult II at 17–18.)

(5) On another occasion when Ms. Chaloult was upset because she was unable to find the master key card, an IBC employee said it looked like "someone" needed to get laid and Mr. Francoeur agreed referring to Ms. Chaloult. (Chaloult I at 50–51.)

(6) Around the end of May 2005, while Ms. Chaloult was talking to Mr. Anderson about a trip she had taken on a motorcycle, Mr. Francoeur interjected into the conversation that girls who ride motorcycles only like it from the backside and then asked Ms. Chaloult if that was true. (Chaloult Dep. at 56.)

(7) Mr. Francoeur also asked Ms. Chaloult if her nipples chaffed and stood out like headlights. (Chaloult I at 37.)

(8) In early July 2005, as Mr. Francoeur, Ms. Chaloult and another IBC employee, Dan Lariviere, were eating éclairs, either Mr. Francoeur or Mr. Lariviere asked Ms. Chaloult how far she could stick the éclair down her throat. Then one of the men said that if there wasn't enough cream, he said he had plenty.[2] (Chaloult I at 47–48; Francoeur Dep. at 22–23; Deposition of Bonnie Chaloult (May 7, 2007) ("Chaloult II") at 21.) Mr. Francoeur and Ms. Chaloult understood cream to mean semen. (Chaloult Aff. ¶ 3; Francoeur Dep. at 22.)

(9) In July of 2005, Mr. Anderson told Ms. Chaloult that Mr. Francoeur had asked him whether he was f——ing Bonnie now. (Chaloult I. at 15.)

IBC had a sexual harassment prevention policy in place while Ms. Chaloult was employed there and Ms. Chaloult was aware of the policy. (Chaloult I at 4; Chaloult I Dep. Exs. 1, 2.) The policy encourages employees to report an incident of sexual harassment to their supervisor. (Chaloult I Dep. Ex. 2.) In addition, the policy requires that:

> If a supervisor becomes aware of any violation or possible violation of the EEOC guidelines, the incident should be reported immediately to the human resources manager or plant general manager.
>
> Supervisors have an affirmative duty to keep their work area free from sexual harassment of any kind and shall take appropriate steps to prevent and eliminate such harassment. This includes sexual harassment by fellow employees and by non-employees.

(Chaloult I Dep. Ex. 2.) Ms. Chaloult was also aware that IBC had a confidential "1–800" complaint line. (Chaloult II at 25.) Ms. Chaloult signed for an updated version of the harassment prevention policy in

---

**2.** With respect to this incident, the only factual dispute relates to which individual made the comments to Ms. Chaloult. Mr. Francoeur testified that it was Mr. Lariviere and Ms. Chaloult testified that it was Mr. Francoeur. The Court finds that, regardless of who made the éclair comment, the incident is relevant to the issue of whether the sexual harassment was sufficiently severe and pervasive such that a reasonable person would find the environment hostile and abusive.

September 2003, indicating that she read the policy and participated in "In this Together" Harassment Training. (Chaloult I at 4–5; Chaloult I Dep. Ex. 3.) On August 4, 2005, Ms. Chaloult submitted her letter of resignation. (Chaloult I at 12, 72.) Ms. Chaloult's last day of work for IBC was August 8, 2005. (Chaloult II at 12; Chaloult II Dep. Ex.12 at 2.)

## III. DISCUSSION

### A. Sexual Harassment Severe and Pervasive

■ With respect to IBC's first argument—whether the alleged sexual harassment was severe or pervasive—although not challenging the above listed incidents, Defendant contends that "[t]he frequency of the allegedly discriminatory conduct was slight" because "there were at most 10 incidents over the course of six months." (Defendant's Motion for Summary Judgment at 6.) After a thorough review of the factual record, including the depositions and exhibits referred to therein, the Court concludes that there are material issues of fact as to whether the incidents of sexual harassment that were directed at Ms. Chaloult were sufficiently severe and pervasive to create an environment that a reasonable person would find hostile and abusive.

### B. *Faragher–Ellerth* Defense

■ IBC's second basis for seeking summary judgment rests on the *Faragher–Ellerth* defense to Ms. Chaloult's of hostile work environment claims. To establish the *Faragher–Ellerth* defense to an employee's claims of hostile work environment or constructive discharge, an employer must establish: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage

of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Arrieta–Colon v. Wal-Mart Puerto Rico, Inc.,* 434 F.3d 75, 86–87 (1st Cir.2006) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)). The factual record establishes that Plaintiff did not notify the human resources manager, the plant manager, or any other IBC superior of Mr. Francoeur's sexually harassing behavior until she gave her resignation notice. Plaintiff does not address the issue of whether she unreasonably failed to take advantage of the preventive opportunities provided by IBC in her brief and has, therefore, waived any challenge to the second prong of the *Faragher–Ellerth* defense. *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 678 (1st Cir.1995) (claim raised in the complaint but ignored at the summary judgment stage is deemed waived).

With respect to the first prong, Plaintiff contends that IBC failed to exercise due care to prevent or correct promptly the sexually harassing conduct by Mr. Francoeur. IBC had a sexual harassment policy in place and the policy provided a method for reporting sexual harassment. (Chaloult I Dep. Ex. 2.) Ms. Chaloult signed an updated version of the harassment prevention policy in September 2003, indicating that she read the policy and participated in "In this Together" Harassment Training. (Chaloult I at 4–5; Chaloult I Dep. Ex. 3.) In addition, Ms. Chaloult was also aware that IBC had a confidential "1–800" complaint line. (Chaloult II at 25.) Plaintiff does not argue that IBC's sexual harassment policy itself was inadequate in any way. Rather, to support her argument that IBC failed to prevent or correct the harassing behavior of Mr. Francoeur,

Plaintiff relies solely on the fact that Mr. Anderson was aware of some of the harassing behaviors and that he failed to report the conduct to the company.

The record reveals that Mr. Anderson is a supervisor at the same level as Plaintiff and that he reported directly to Mr. Francoeur. Although IBC's sexual harassment policy provides that any "supervisor" who becomes aware of a possible violation of the sexual harassment policy has an affirmative duty to promptly report such conduct to the human resources manager or plant general manager, Mr. Anderson's failure to follow the company reporting policy does not, on this record, create a genuine issue of material fact with respect to whether IBC failed to exercise due care to prevent or correct promptly the sexually harassing conduct by Mr. Francoeur. As stated above, the record clearly establishes that Plaintiff never notified the human resources manager, the plant manager, or any other IBC superior of Mr. Francoeur's sexually harassing behavior until she gave her resignation notice. In fact, there is no evidence in the record that any employee superior to Mr. Francoeur had any knowledge of the harassing behavior. Thus, Plaintiff did not provide IBC with the opportunity to correct the situation or prevent Mr. Francoeur from engaging in such conduct in the future. Given the existence of IBC's sexual harassment policy, which included a method of reporting violations, and in the absence of any awareness on the part of IBC of Mr. Francoeur's harassing conduct, the Court concludes that IBC exercised reasonable care to prevent and correct Mr. Francoeur's sexual harassment. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Marrero v. Goya of Puerto Rico*, 304 F.3d 7, 20 (1st Cir.2002) (first prong of affirmative defense is "addressed by proof that the employer 'had promulgated an antiharassment policy with [a] complaint proce-

dure' ")(quoting *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257).

There being no genuine issues of material fact as to (1) whether IBC exercised reasonable care to prevent and correct promptly any sexually harassing behavior, or (2) whether Ms. Chaloult unreasonably failed to take advantage of any preventive or corrective opportunities provided by IBC, IBC is entitled to summary judgment on its affirmative defense. Accordingly, the Court **ORDERS** that Defendant's Motion for Summary Judgment be, and it is hereby, **GRANTED.**